IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO: 1:26-cv-606

| | |
|---|---|
| SAMUEL SCOTT PAGE,<br>Plaintiff,<br><br>v.<br><br>ROCKINGHAM COUNTY and<br>P. KEVIN BERGER, in his individual<br>capacity,<br>Defendants. | **COMPLAINT**<br><br>**(Jury Trial Demanded)** |

NOW COMES Plaintiff Samuel Scott Page ("Plaintiff" or "Sheriff Page"), by and through his undersigned counsel, and brings this action against Defendant Rockingham County (the "County") and Defendant P. Kevin Berger, in his individual capacity ("Defendant Berger"). Plaintiff, complaining of the Defendants, alleges and says as follows:

## INTRODUCTION

For nearly three decades, the people of Rockingham County have elected Plaintiff to serve as their Sheriff. In 2023, when the leadership of the North Carolina Senate sought to bring a commercial casino to Rockingham County, Sheriff Page stood with the overwhelming majority of his constituents and opposed it. In 2025, he announced that he would challenge the casino's principal champion, Senator Phil Berger, Sr. ("Senator Berger"), for the North Carolina Senate seat that includes Rockingham County. On March 3, 2026, the voters in the Republican primary election chose Sheriff Page. In Rockingham County, Sheriff Page defeated Senator Berger by a three-to-one margin.

1

This case arises from Defendants' retaliation against Sheriff Page for his opposition to Senator Berger's casino legislation and candidacy. Led by Defendant Berger, who is a County Commissioner and Senator Berger's son, the County attempted to unlawfully reduce Sheriff Page's compensation in the middle of his term in violation of N.C. Gen. Stat. § 153A-92. The County now demands that Sheriff Page repay the compensation he was entitled to receive and has threatened to deduct the disputed amount from his final paycheck if he retains the income he was lawfully paid. Even after Sheriff Page sought for weeks to resolve the matter without litigation, the County left the unlawful freeze and its repayment demand in place, restored only two earlier years' adjustments through a motion that did not amend any budget ordinance, and publicly mischaracterized the compensation it had withheld as a matter of its own "discretion" to grant or withhold. That spurious demand follows several months of Defendant Berger's abuse of his position as a County Commissioner in an unsuccessful effort to harm Plaintiff's candidacy in his campaign against Senator Berger. Campaign finance reports that Sheriff Page's campaign committee had properly filed with the County Board of Elections, which the County was required by law to preserve, disappeared from the County's files, and Defendant Berger seized upon their absence to call for Sheriff Page to be investigated. Defendant Berger falsely claimed from the Commissioners' dais during multiple meetings in the weeks before the primary election that a modest vending machine account, which the County Sheriff's Office had properly disclosed to the County's Finance Department in writing in 2011, was Sheriff Page's "secret bank account."

When the government withholds a benefit from a person because of his constitutionally protected speech, "his exercise of those freedoms would in effect be penalized

2

and inhibited," allowing the government to "produce a result which [it] could not command directly." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The First Amendment accordingly protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). That principle is not rendered inapplicable because the person engaged in the protected activity holds office, or because his protected speech proved persuasive to voters, or because he defeated the leader of the State Senate. Sheriff Page brings this action to recover the compensation taken from him, to protect the retirement benefit he earned over twenty-eight years of honorable service, and to vindicate the constitutional rights Defendants violated.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under 28 U.S.C. § 1331, because Plaintiff's claim for First Amendment retaliation arises under the Constitution and laws of the United States. The Court also has original jurisdiction under 28 U.S.C. § 1343(a)(3) and (4), because Plaintiff's claim seeks redress for the deprivation, under color of state law, of rights secured by the Constitution and damages and equitable relief under 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over Plaintiff's claims arising under N.C. Gen. Stat. § 153A-92, including Plaintiff's claim for a declaration of the parties' respective rights and obligations under that statute, pursuant to 28 U.S.C. § 1367(a). Those claims arise from the same compensation decisions that give rise to Plaintiff's 42 U.S.C. § 1983 claim, and all of Plaintiff's claims form part of the same case or controversy. The Declaratory Judgment Act,

3

28 U.S.C. §§ 2201-2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure authorize the declaratory and injunctive relief Plaintiff seeks.

3.      Venue is proper in the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1391(b), because all parties reside in this District and because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in Rockingham County, which lies within this District.

## **PARTIES**

4.      Plaintiff is a citizen and resident of Rockingham County, North Carolina.  Plaintiff is, and at all times relevant to the claims set out herein has been, the duly elected Sheriff of Rockingham County, North Carolina.  Plaintiff has served as the Sheriff of Rockingham County continuously since 1998.  The office of Sheriff is a four-year elective office established by Article VII, Section 2 of the Constitution of North Carolina.

5.      Defendant Rockingham County is a body politic and corporate and a political subdivision of the State of North Carolina.  The County acts through its Board of Commissioners, which fixes and approves the compensation of the County's officers and employees, including the County's elected officers.  At all times relevant to the claims set out herein, the County acted under color of state law.

6.      Defendant P. Kevin Berger is, and at all times relevant to the claims set out herein has been, a member of the Rockingham County Board of Commissioners.  Defendant Berger is the son of Senator Berger.  Defendant Berger is sued in his individual capacity for conduct he undertook under color of state law.

4

## STATEMENT OF FACTS

Sheriff Page's Compensation and the Protection of State Law

7.      Sheriff Page's current term of office began in December 2022 and runs through December 2026.

8.      When Sheriff Page's current term began, and for more than twenty years preceding it, Sheriff Page's compensation included cost-of-living adjustments ("COLA") and merit increases on the same basis as every other County employee. The County granted those increases to the elected Sheriff, and all other County employees, every year as a matter of settled practice.

9.      Section 10 of the County's budget ordinance for fiscal year 2023-2024, adopted during Sheriff Page's current term, provided the following compensation for the elected Sheriff: "Benefits, along with pay increases such as **merit raises, cost of living adjustments**, and classification and compensation study increases will be offered in the same manner as other County employees and as required by law." (Emphasis added.)

10.     North Carolina law prohibits a county from reducing the compensation of an elected officer during the officer's term. A board of commissioners "may not reduce the salary, allowances, or **other compensation** paid to an officer elected by the people for the duties of his elective office if the reduction is to take effect during the term of office for which the incumbent officer has been elected," subject only to the officer's consent or an order of the Local Government Commission.[1]  N.C. Gen. Stat. § 153A-92(b)(1) (emphasis added).

_____

[1] The Local Government Commission ("LGC"), a State agency within the North Carolina Department of State Treasurer and chaired by the State Treasurer, oversees the financial affairs of local governments statewide and should not be confused with a county's elected Board of

5

<u>Sheriff Page's Protected Political Activity</u>

11.     In 2022 and 2023, The Cordish Companies ("<u>Cordish</u>"), a casino developer based in Maryland, lobbied to bring commercial casino gaming to North Carolina. Cordish selected Rockingham County as the location for one of its casinos. The effort's principal champion in the General Assembly was Senator Berger, the President Pro Tempore of the North Carolina Senate.

12.     In June 2023, a Cordish holding company, NC Development Holdings LLC, applied to Rockingham County to rezone a 193-acre tract of land in Stokesdale from residential agricultural to highway commercial use. Within days of that application, all five members of the County Board of Commissioners, including Defendant Berger, secretly traveled to Maryland to meet with Cordish. The County Board of Commissioners gave no public notice of the meeting, kept no minutes of it, and for months refused to acknowledge that it had occurred.

13.     On August 21, 2023, approximately nine hundred residents attended the County Board of Commissioners' public hearing on NC Development Holdings LLC's rezoning application. The crowd was so large that most of the attendees listened from an overflow area outside the building where the hearing took place. Every person who spoke at the hearing, including Sheriff Page, opposed the application. Despite the vocal opposition of Rockingham County residents, the County Board of Commissioners unanimously approved NC Development Holdings LLC's rezoning application.

---

Commissioners. Under N.C. Gen. Stat. § 153A-92(b)(1), it is the only authority that may order a mid-term reduction in an elected county officer's compensation, and then only "pursuant to Chapter 159, Article 10," which governs the LGC's intervention in financially distressed units.

14. Throughout 2023, as Senator Berger spearheaded legislation to authorize the operation of a commercial casino in Rockingham County, Sheriff Page opposed the project publicly and repeatedly. Sheriff Page warned that the casino would bring crime to the County and prey upon its residents, and he urged that the issue be decided by voters in a referendum.

15. In September 2023, the casino legislation was defeated in the General Assembly. Sheriff Page's opposition to the casino legislation spearheaded by Senator Berger placed him in open conflict with Senator Berger and with Rockingham County officials who had supported the project with Cordish, including Defendant Berger.

16. In February 2025, Sheriff Page announced that he would challenge Senator Berger in the 2026 Republican primary for the office of North Carolina Senator for District 26, which includes Rockingham County.

17. On March 3, 2026, the voters of North Carolina Senate District 26 ("District 26") chose Sheriff Page over Senator Berger in the Republican primary election. Senator Berger demanded recounts and filed election protests in Rockingham County and Guilford County, and when those efforts failed to change the outcome of the election, he eventually conceded the race to Sheriff Page on or about March 24, 2026. Sheriff Page's defeat of the longest-serving state legislative leader in the country was among the most consequential primary results in recent North Carolina history.

18. Sheriff Page's opposition to the development of a commercial casino in Rockingham County, his call for a referendum, his candidacy for Senator of District 26, and his campaign against Senator Berger in the 2026 Republican primary election were each protected activities under the First Amendment to the United States Constitution.

7

19.     In the months leading up to the March 3, 2026 primary election, Defendant Berger used the time afforded to him at public meetings of the Rockingham County Board of Commissioners to disparage Sheriff Page and to campaign for the reelection of his father, Senator Berger. Defendant Berger's remarks, including false statements accusing Sheriff Page of financial misconduct, establish that he regarded Sheriff Page as a political adversary and resented Sheriff Page's challenge to Senator Berger for the position of Senator of District 26.

<u>Destruction of Sheriff Page's Campaign Finance Records</u>

20.     From 1998 until July 2017, Sheriff Page's campaign committee filed its campaign finance disclosure reports with the Rockingham County Board of Elections in paper form. Every required report was timely filed, and in nearly three decades of running for and attaining elected office, no elections authority ever questioned Sheriff Page's campaign committee's compliance. After July 1, 2017, Sheriff Page's campaign committee filed its reports electronically.

21.     Once filed by Sheriff Page's campaign committee, the campaign finance reports and other records were public records in the custody of the Rockingham County Board of Elections. North Carolina law prohibits a public official from destroying or otherwise disposing of a public record, except in accordance with an approved records retention schedule and the consent of the Department of Natural and Cultural Resources. *See* N.C. Gen. Stat. §§ 132-3(a), 163-278.37. A candidate's committee, by contrast, is required to preserve its own records for only two years from the date of the election to which they relate. *See* N.C. Gen. Stat. § 163-278.35. As of February 2025, the duty to preserve campaign finance

8

reports filed by Sheriff Page's campaign committee prior to July 1, 2017 was the obligation of the Rockingham County Board of Elections, not Sheriff Page.

22. The campaign finance reports that Sheriff Page's committee filed in paper form before July 1, 2017 remained on file with the Rockingham County Board of Elections, and available to the public, throughout the nearly three decades in which Sheriff Page sought and held elective office. Upon information and belief based on the timing of the discovery of their disappearance immediately after Sheriff Page announced his candidacy, the fact that the only campaign finance reports that could not later be located were those of Sheriff Page and one other candidate who had publicly opposed the Berger family's political interests, and Defendant Berger's subsequent public exploitation of their absence to damage Sheriff Page's candidacy, those reports were removed or destroyed by Defendant Berger or by a person acting in concert with or at the direction of Defendant Berger.

23. Upon information and belief, the only campaign finance reports that could not later be located were those of Sheriff Page and one other candidate who, like Sheriff Page, had publicly opposed the Berger family's political interests. Sheriff Page does not contend that any current employee of the Rockingham County Board of Elections participated in, directed, or bears any responsibility for the disappearance or destruction of these records.

24. Upon information and belief, after the campaign finance reports that Sheriff Page's committee had filed with the Rockingham County Board of Elections before July 1, 2017 went missing, Defendant Berger submitted public records requests to the Rockingham County Board of Elections from April 14-26, 2025, from his official County email. Upon information and belief, Defendant Berger requested these records regarding Sheriff Page from the County

9

Board of Elections because he knew the reports could not be produced and intended to exploit their absence to create a false narrative alleging wrongdoing by Sheriff Page and damage his candidacy for Senator of District 26. Upon information and belief, Defendant Berger, directly or through an intermediary, contacted a media outlet and alleged that Sheriff Page's committee reports were missing to cause the media outlet to publish a story suggesting Sheriff Page had failed to comply with campaign finance laws.

25. On June 5, 2025 at 3:58 p.m., WBTV published an article[2] regarding the reporter's inability to obtain from the Rockingham County Board of Elections the campaign finance reports filed by Sheriff Page's campaign committee before July 1, 2017. On June 5, 2025 at 4:51 p.m., less than an hour after the publication of the WBTV article online, Defendant Berger shared[3] the article on his Facebook page, commenting, "Very strange."

26. On June 5, 2025, Sheriff Page made a written request to the executive director of the North Carolina State Board of Elections, Sam Hayes, for an investigation into the disappearance of nearly twenty years of his campaign committee's properly filed financial disclosures.

27. On June 11, 2025, counsel for the North Carolina State Board of Elections wrote to Sheriff Page, acknowledged that the statutory retention period for records filed prior to July 1, 2017 applicable to his campaign committee had long since expired and informed him that the County Board of Elections, for which the statutory retention period had not expired, had

---

[2] Nick Ochsner, *North Carolina sheriff's campaign finance records missing as he launches bid for bigger office*, WBTV (June 5, 2025), https://www.wbtv.com/2025/06/05/north-carolina-sheriffs-campaign-finance-records-missing-he-launches-bid-bigger-office/.

[3] Kevin Berger (@kevin.berger.370), FACEBOOK (June 5, 2025), https://www.facebook.com/share/p/1bjXqP3RH1/.

been unable to locate the records filed by Sheriff Page's committee in paper form. Upon information and belief, the County Board of Elections has never publicly explained why Sheriff Page's campaign finance records were destroyed.

28. Defendant Berger made multiple social media posts falsely maligning Sheriff Page for the failure of the County Board of Elections, over which Sheriff Page has no control, to retain the campaign finance reports timely and properly filed by Sheriff Page's campaign committee before July 1, 2017. The false statements made by Defendant Berger regarding Sheriff Page's campaign finance reports include, but are not limited to, the following:

a. On July 5, 2025 at 1:05 p.m., Defendant Berger posted[4] on his Facebook page: "[Sheriff Page]'s campaign finance reports are missing and he seems to be very upset that some of us want answers. Campaign reports are supposed to be public records. . . . What exactly is [Sheriff Page] trying to hide this time?"

b. On July 7, 2025 at 7:14 a.m., Defendant Berger replied[5] to an X post made three minutes earlier by Berger War Room, "Why is [Sheriff Page] so scared for people to see the reports?"

c. On October 3, 2025 at 5:49 p.m., Defendant Berger replied[6] to an X post made at 2:19 p.m. by Berger War Room regarding the WBTV story referenced in

---

[4] Kevin Berger (@kevin.berger.370), FACEBOOK (July 5, 2025), https://www.facebook.com/share/p/1GER4Wa241/.
[5] Kevin Berger (@KevinBerge23854), X (July 7, 2025), https://x.com/KevinBerge23854/status/1942180514036596878.
[6] Kevin Berger (@KevinBerge23854), X (Oct. 3, 2025), https://x.com/KevinBerge23854/status/1974230400923840771.

paragraph 25 above, "Supposed to be public documents when you run for office."

    d.    On November 7, 2025 at 5:12 p.m., Defendant Berger replied[7] to an X post made fifteen minutes earlier by Berger War Room, "Very strange the only [campaign finance] reports missing are [Sheriff Page] and a close friend[8] of [Sheriff Page]."

29.    Although Defendant Berger professed concern about the missing campaign finance records, accusing Sheriff Page from his public platform of hiding records that Sheriff Page had no obligation to maintain or preserve, he made no apparent effort to learn how, when, or by the actions of whom those records had disappeared from the County's files. Upon information and belief, Defendant Berger had no genuine interest in determining how public records in the Rockingham County Board of Elections' custody came to be missing, because his purpose was to exploit their absence to manufacture a controversy that would benefit Senator Berger's reelection campaign against Sheriff Page.

30.    The deliberate insinuation by Defendant Berger that Sheriff Page or his campaign committee had failed to comply with campaign finance reporting laws was false. All reports

---

[7] Kevin Berger (@KevinBerge23854), X (Nov. 7, 2025), https://x.com/KevinBerge23854/status/1986919616694645131.

[8] Upon information and belief, the "close friend" mentioned by Defendant Berger in this post is former County Commissioner Craig Travis ("Mr. Travis"), who is also a political opponent of Defendant Berger and Senator Berger. Like Sheriff Page, Mr. Travis was a vocal opponent of efforts to bring a commercial casino to Rockingham County. Mr. Travis filed a lawsuit against Defendant Berger in *Travis v. Berger et al.*, Wake County File 24CV018884-910, *appeal pending*, North Carolina Court of Appeals Case No. COA26-9, regarding Defendant Berger's conduct during the 2024 Republican primary election. Upon information and belief, Mr. Travis's campaign committee's records disappeared from the County Board of Elections during the same period and in the same manner as Sheriff Page's records.

12

filed by Sheriff Page's campaign committee were properly completed, timely filed, and constituted public records in the County's custody. As of April 2025, neither Sheriff Page nor his campaign committee had an obligation to retain campaign finance reports filed on or before July 1, 2017. Upon information and belief, the campaign finance reports filed by Sheriff Page's committee prior to July 1, 2017 were removed or destroyed by Defendant Berger or by a person acting in concert with him so that their absence could be used to manufacture a false allegation of wrongdoing by Sheriff Page to improve Senator Berger's electoral prospects.

<u>Defendant Berger's False "Secret Account" Accusations</u>

31. For decades, the Rockingham County Sheriff's Office has maintained a modest checking account that holds the proceeds of vending machines located in the secure area of the Sheriff's Office for the benefit of deputies and other Sheriff's Office employees ("<u>Canteen Account</u>"). The Canteen Account was established before Sheriff Page took office in 1998.

32. The Canteen Account has never been a secret. On May 4, 2011, the County's Finance Department directed every County department head to provide a list of all departmental checking accounts, including the name of the bank, the name of each account, and the persons authorized to sign checks issued from the account. On May 17, 2011, the Sheriff's Office responded in writing; disclosed the Canteen Account; and identified the bank, name, and authorized signers for the Canteen Account as requested. The County Finance Department received the disclosure on or about May 17, 2011, annotated it, and retained it in the County's files. A copy of the May 17, 2011 memorandum from the Sheriff's Office to the County Finance Department regarding the Canteen Account is attached hereto as **EXHIBIT A** and incorporated by reference herein.

13

33. North Carolina law requires the County to undergo an independent financial audit each year, and the County's Finance Department is responsible for providing the County's financial records, including the departmental account information it collects, to the independent auditor. In the fourteen years that followed the 2011 disclosure by the Sheriff's Office, no auditor, finance officer, commissioner, or other official ever questioned or raised any concerns about the Canteen Account.

34. On December 1, 2025, Sheriff Page filed his notice of candidacy to run against Senator Berger for the District 26 seat in the North Carolina Senate.

35. On the evening of December 1, 2025, after Sheriff Page had filed his notice of candidacy, Defendant Berger announced from the dais at the County Board of Commissioners meeting that the County had "discovered a bank account that was off the books [referring to the Canteen Account]," falsely asserted that the Canteen Account was "not authorized by the County Commissioners, not reported in any County financial statements," and falsely declared that "[t]he County never knew about [the Canteen Account]."

36. At the January 20, 2026 meeting of the County Board of Commissioners, Defendant Berger falsely stated that the Canteen Account was "[Sheriff Page's] secret bank account that was discovered by the Finance department."

37. Defendant Berger made multiple social media posts falsely accusing Sheriff Page of financial misconduct, including, but not limited to, the following:

14

a. On November 13, 2025 at 6:23 p.m., Defendant Berger replied[9] to an X post made at 4:02 p.m. by Berger War Room, "The County was unaware of the [Canteen Account]. To quote [Sheriff Page], Commissioners control the budget. His role does not include any ability to set up a bank account or spend from the unauthorized account. Sounds like [Sheriff Page] doesn't know his role."

b. On January 31, 2026 at 1:36 p.m., Defendant Berger replied[10] to an X post made at 1:10 p.m. by Berger War Room, "We can't even get [Sheriff Page] to provide all of the [Canteen Account] records (he said he has them)."

c. On February 16, 2026 at 7:30 a.m., Defendant Berger replied[11] to an X post made at 5:32 a.m. by Berger War Room, "The public has a right to see if any of the transactions include the same parties as his secret bank account [referring to the Canteen Account], but a lot of those records are missing too."

38. The statements made by Defendant Berger regarding the Canteen Account, as set out in paragraphs 35 through 37 above, were false, and Defendant Berger made these statements knowing they were false or, at the very least, with reckless disregard for their truth or falsity. The Canteen Account had been disclosed in writing in 2011, to the same County Finance Department that Defendant Berger falsely credited with "discovering" it in 2025, in response

---

[9] Kevin Berger (@KevinBerge23854), X (Nov. 13, 2025), https://x.com/KevinBerge23854/status/1989111790303633834.
[10] Kevin Berger (@KevinBerge23854), X (Jan. 31, 2026), https://x.com/KevinBerge23854/status/2017668359521710209.
[11] Kevin Berger (@KevinBerge23854), X (Feb. 16, 2026), https://x.com/KevinBerge23854/status/2023374414948254094.

to the County Finance Department's routine request for information to all County departments. The disclosure properly reporting the requested information regarding the Canteen Account to the Finance Department had been in the County's files through fourteen years of independent audits, and no County official expressed any concerns about it until after Sheriff Page announced that he would run against Senator Berger in the 2026 primary election.

39. Defendant Berger, who chaired the Rockingham County Board of Commissioners in 2025, could easily have obtained the May 17, 2011 memorandum from the Rockingham County Sheriff's Office regarding the Canteen Account and any other records related to the Canteen Account. These records were all within the custody and control of the County, and the Rockingham County Finance Department had been aware of the purpose and existence of the Canteen Account for more than fourteen years before Defendant Berger began falsely referring to it as Sheriff Page's "secret account."

40. Upon information and belief, Defendant Berger, or others acting in concert with him, requested an unwarranted investigation of the Canteen Account to be initiated by the North Carolina State Bureau of Investigation ("SBI"), and the existence of that investigation was made public, contrary to the SBI practice of keeping its investigations confidential, in the months preceding the March 3, 2026 primary. Sheriff Page has never been charged with any offense in connection with the Canteen Account, despite, upon information and belief, aggressive efforts by Defendant Berger and his political allies to persuade the SBI to charge Sheriff Page in order to benefit Senator Berger's struggling reelection campaign against Sheriff Page.

16

41.     Defendant Berger's false allegations of misconduct regarding the Canteen Account, as set out in paragraphs 35 through 37 above, and Defendant Berger's efforts to weaponize a baseless SBI investigation regarding the Canteen Account, as set out in paragraph 40 above, were intended to harm Sheriff Page's candidacy in the March 3, 2026 primary election.

42.     Defendant Berger and his allies did not conceal their objective of inflicting harm on Sheriff Page far beyond any electoral defeat.  In August 2025, Jim Blaine ("Mr. Blaine"), Senator Berger's former chief of staff and longtime political adviser, presciently described during an interview with Tim Boyum of Spectrum News what lay ahead for Sheriff Page if he filed to run against Senator Berger in the 2026 primary election after the candidate filing period opened in December 2025.  At the time of the interview, Mr. Blaine's political consulting firm was involved in Senator Berger's reelection campaign.  Mr. Blaine stated:

> By the time that race is over, [Sheriff Page] may have to move out of the county. . . Some of these people that have axes to grind with [Senator Berger] have pushed a dupe [referring to Sheriff Page] out into the road, and **he's going to get hit by a car**.[12]

43.     Mr. Blaine's forecast about the outcome of the March 3, 2026 primary election was wrong, but his forecast of the harm Sheriff Page would suffer in other ways proved accurate because it was not a prediction at all.  At the time of Mr. Blaine's interview in August 2025, the coordinated campaign of retaliation against Sheriff Page, in which, upon information and belief, Defendant Berger and Mr. Blaine were both involved, was already underway.  Sheriff Page's decades-old campaign finance records had been destroyed, upon information and

---

[12] Ray Gronberg, *A top aide's view on how Page upset Berger*, BUSINESS NORTH CAROLINA (Apr. 1, 2026), https://businessnc.com/a-top-aides-view-on-how-page-upset-berger/ (quoting Mr. Blaine's August 2025 interview on the Spectrum News podcast "Tying It Together with Tim Boyum") (emphasis added).

belief, during the spring of 2025, and their destruction had been publicized by Defendant Berger and others acting in concert with him through a coordinated media campaign beginning in June 2025. In the months that followed, Defendant Berger and others, including Mr. Blaine, committed the retaliatory, adverse acts described herein against Sheriff Page just as Mr. Blaine had promised. Mr. Blaine's threat was intended to intimidate Sheriff Page to deter him from filing to run against Senator Berger in the 2026 primary election, and when Sheriff Page exercised his right to engage in protected First Amendment activity by running against and unseating Senator Berger, Mr. Blaine, Defendant Berger, the County, and others followed through on their threats of retaliatory adverse action against Sheriff Page.

<u>County Unlawfully Reduces Sheriff Page's Compensation</u>

44.    In December 2022, at the time Sheriff Page took office for his current term, section 10 of the County's budget ordinance provided as follows:

> The current Rockingham County Sheriff, as of the effective date of this ordinance, shall be compensated at a rate of $116,619.27 annually. Benefits, along with pay increases such as **merit raises, cost of living adjustments**, and classification and compensation study increases will be offered in the same manner as other County employees and as required by law. Future Sheriff's (sic) shall be compensated according to the adopted Rockingham County Pay Plan.

> (Emphasis added.)

45.    After Sheriff Page took office in December 2022, the County unlawfully removed from his compensation the cost-of-living and merit increases that had been part of his "other compensation" within the meaning of N.C. Gen. Stat. § 153A-92 for more than two decades.

46.    The County budget ordinance for fiscal year 2024-2025, which was the first ordinance passed after Sheriff Page publicly opposed the casino legislation spearheaded by Senator

18

Berger and the related rezoning efforts by Defendant Berger, as described in paragraphs 11 through 15 above, deleted the language guaranteeing COLA and merit increases for the County Sheriff that had been included in all prior ordinances and provided only that "[h]ealthcare and retirement benefits will be offered in the same manner as other County employees and as required by law." For the first time in more than 20 years, Sheriff Page, unlike all other County employees, did not receive a COLA increase as part of his compensation during the 2024-2025 fiscal year.

47. Although section 10 of the 2025-2026 budget ordinance was identical to section 10 of the 2024-2025 budget ordinance, during fiscal year 2025-2026, the County placed in service a new automated payroll system that applied the County's standard COLA increase to every County employee, including Sheriff Page. In emails exchanged with Diane Juffras ("Ms. Juffras") and Kara Millonzi ("Ms. Millonzi") of the University of North Carolina School of Government in May 2026, County Manager Lance Metzler ("Mr. Metzler") acknowledged that Sheriff Page had received COLA and merit increases in the same manner as every other County employee as a matter of longstanding practice. On May 20, 2026 at 9:24 p.m., Ms. Millonzi stated in an email to Mr. Metzler, Ms. Juffras, and Sheriff Page:

> If the county board of commissioners approved the COLA in the past for the Sheriff and [Register of Deeds], **I don't believe the commissioners can reduce the Sheriff's or [Register of Deeds's] compensation during the current term of office.**

(Emphasis added.)

48. After Sheriff Page defeated Senator Berger in the March 3, 2026 primary election, the County demanded that Sheriff Page repay the COLA increase he had received during fiscal year 2025-2026, erroneously recast it as a purported overpayment, and threatened to deduct

19

the 2025-2026 COLA amount from Sheriff Page's final paycheck if he declined to repay it before he retired.

49. On June 1, 2026, the County adopted the budget ordinance for fiscal year 2026-2027. For the first time, section 10 of the budget ordinance provided that the County Sheriff's "[s]alary is not eligible for Cost of Living Adjustments (COLA) and Merit increases." That ordinance took effect on July 1, 2026, set Sheriff Page's salary for the 2026-2027 fiscal year at $156,289.61, and remains in force. Despite a self-serving press release to the contrary, the County has never amended the fiscal year 2026-2027 budget ordinance to remove that carve-out or to lift the freeze it imposed on Sheriff Page's compensation.

50. Sheriff Page attempted in good faith to resolve the compensation issue described above with the County before filing this action. Despite Sheriff Page's efforts to resolve this matter without the Court's involvement, on June 5, 2026, the County, through County Attorney Clyde Albright, incorrectly asserted in correspondence to counsel for Sheriff Page that the COLA paid to Sheriff Page during the 2025-2026 fiscal year "is an overpayment," that "[t]he county is entitled to recoup this overpayment from the Sheriff," and that "the county may deduct the amount due from the Sheriff's final paycheck." The County's written demand confirms its intention to imminently and unlawfully take from Sheriff Page, by deduction from his final paycheck, compensation lawfully paid to him during his current term of office. Without any adjudication, or even attempt to seek adjudication, of its asserted right, the County has threatened to unlawfully take the disputed funds by unilateral deduction from Sheriff Page's final paycheck, a resort to self-help against an elected official on the eve of his retirement that reveals the punitive purpose behind its demand. Sheriff Page persisted in seeking a resolution.

20

51. On June 22, 2026, the Board of Commissioners held a special meeting, the published agenda for which disclosed only a closed session to approve closed-session minutes and to consult with the County's attorney. Following that closed session, and on Defendant Berger's motion, the Board voted[13] in open session, as "new business," to apply to the base salaries of the Sheriff and the Register of Deeds the cost-of-living adjustment for fiscal year 2024-2025 and the COLA that all other County employees received in the fiscal year 2025-2026 budget. The Board took no action as to fiscal year 2026-2027 and did not amend the 2026-2027 budget ordinance.

52. On June 24, 2026, counsel for Sheriff Page wrote to County Attorney Clyde Albright and requested, among other things, the legal basis and amount of an inexplicable reduction appearing in Sheriff Page's most recent paycheck, the County's confirmation that it would take nothing further from his pay during his current term of office, the amount and timing of repayment of the back pay owed to Sheriff Page, whether the withheld merit increases for Sheriff Page would be restored, the figure the County would report to LGERS as Sheriff Page's compensation for each fiscal year of his current term, and the instrument by which the Board's June 22, 2026 action would take legal effect. The County answered none of these requests. The County Attorney responded only that the Board had "announced its decision to make adjustments" for fiscal years 2024-2025 and 2025-2026 and he refused to identify the ordinance, resolution, or other instrument by which that action will take effect.

---

[13] Rockingham County NC (@MyRockinghamCounty), *Rockingham County Board of Commissioners Special Meeting | June 22, 2026*, at 22:48, YOUTUBE (June 22, 2026), https://www.youtube.com/watch?v=DAKD9WaFqeY.

21

53. On June 26, 2026, rather than answer Sheriff Page's request regarding his compensation, the County published a media release on its official Facebook page announcing that the Sheriff's salary would increase "[e]ffective July 1, 2026" based on COLA for fiscal years 2024-2025 and 2025-2026 alone, while erroneously describing such adjustments as "not required," a matter of the Board's "discretion," and "voluntary." However, the County has unilaterally reduced Sheriff Page's compensation without specifying the reason for this reduction, kept in place both the freeze on his 2026-2027 compensation and its demand for repayment, declined to give Sheriff Page the information he needs to confirm what the County intends to pay him and report on his behalf to LGERS, and publicly proclaimed that it has the discretion to grant or withhold the compensation in dispute. Having exhausted his good-faith efforts to resolve this dispute without legal action, and left with no other means of protecting his compensation and his retirement benefit, Sheriff Page commenced this action.

<u>Disparate Treatment of the Register of Deeds</u>

54. Reading sections 10 and 11 of each County budget ordinance in isolation, the compensation structure of the Sheriff is ostensibly consistent with the compensation structure of the Register of Deeds, omitting COLA and merit increases in the 2024-2025 ordinance and applying the same "not eligible" language to both offices in the 2026-2027 ordinance. However, reading the entire budget ordinance, it is clear that only Sheriff Page's compensation was actually reduced by the County.

55. Sheriff Page's stated salary has been frozen at $156,289.61 in the County's budget ordinances since the 2024-2025 fiscal year. Over that same period of time, the stated salary of the County Register of Deeds, who was also not entitled to COLA or merit increases beginning

in the 2024-2025 fiscal year according to section 11 of the budget ordinances, rose each year. The County raised one elected official's salary in the same instrument declaring that official ineligible for raises while it froze Sheriff Page's salary and unlawfully demanded that he repay the COLA increase he was lawfully paid during the 2025-2026 fiscal year. The County's June 22, 2026 vote did not change this. It purportedly applied the same fiscal year 2024-2025 and 2025-2026 COLA to both offices, which the County's June 26, 2026 media release announced resulted in a 2026-2027 salary of $167,417.43[14] for the Sheriff and $124,080.29 for the Register of Deeds, which preserves rather than closes the gap the County created by raising the Register of Deeds's salary while freezing Sheriff Page's. The freeze and the "not eligible" carve-out the County directed at Sheriff Page for the 2026-2027 fiscal year remain in force.

56. Sheriff Page has announced that he will retire as Sheriff of Rockingham County within the next few months. Sheriff Page's retirement benefit under the Local Governmental Employees' Retirement System ("LGERS") is calculated upon the compensation reported by the County. If the County reports unlawfully reduced compensation for Sheriff Page for fiscal years 2024-2025, 2025-2026, and 2026-2027, or deducts from Sheriff Page's final paycheck the COLA increase already paid to Sheriff Page during the 2025-2026 fiscal year, Sheriff Page's LGERS retirement benefit will be unlawfully diminished for the remainder of his life. Sheriff Page's final paycheck will issue upon his retirement within the next few months, and the

---

[14] Contrary to the County's press release, the motion made at the June 22, 2026 meeting did not amend Sheriff Page's stated salary fixed in the 2026-2027 budget ordinance, and there has been no notice of impending action by the County Board of Commissioners to amend the budget ordinance to reflect the salary stated in the press release. In fact, the motion made by Defendant Berger on June 22, 2026 is expressly inconsistent with that position, as it leaves all other "previously approved" salary changes undisturbed.

23

County will report his compensation to LGERS in connection with his retirement. The economic harm the County has threatened to inflict upon Sheriff Page in retaliation for Sheriff Page engaging in constitutionally protected First Amendment activity is imminent. The County has refused to take action to prevent that harm. When Sheriff Page asked the County to simply state the figure it would certify to LGERS for each fiscal year of his term and confirm that the restored 2024-2025 adjustment would be reported as compensation earned in that year rather than as a lump sum paid in 2026, the County declined to answer. The County's June 26, 2026 media release, moreover, described the increase as taking effect only at the start of the 2026-2027 fiscal year. Because Sheriff Page's retirement benefit will be fixed by the amounts the County certifies and the years to which it assigns them, the County's refusal to account for its reporting leaves the threatened diminution of his benefit unresolved.

57.     The reason for the disparate treatment of the Register of Deeds and Sheriff Page in the County's budget ordinances since the 2024-2025 fiscal year is obvious—Sheriff Page publicly opposed the pro-casino initiatives supported by Defendant Berger and Senator Berger and unseated Senator Berger in the March 3, 2026 primary election; the Register of Deeds did not.

58.     Sheriff Page has not consented to any reduction of his compensation, and the LGC has not ordered any reduction. Rockingham County is not, and has never been, subject to the assumption of financial control by the LGC.

## <u>FIRST CAUSE OF ACTION</u>
**(Retaliation in Violation of the First and Fourteenth Amendments, 42 U.S.C. § 1983—Against All Defendants)**

59.     The allegations of paragraphs 1 through 58 above are hereby realleged and incorporated by reference as if fully set forth herein.

24

60. The First Amendment to the United States Constitution, made applicable to the County through the Fourteenth Amendment, protects Sheriff Page's rights to speak on matters of public concern, to petition the government for redress, and to associate and compete for elective office. Sheriff Page's opposition to the pro-casino initiatives supported by Senator Berger and Defendant Berger, call for a referendum regarding the development and operation of a casino in Rockingham County, and candidacy and campaign against Senator Berger were all lawful exercises of his protected First Amendment rights.

61. A government official may not punish a person for engaging in protected speech or political activity. Specifically, a government official may not punish a person who engages in activity protected by the First Amendment by taking action against him that would deter a person of ordinary firmness from engaging in, or continuing to engage in, the constitutionally protected activity.

62. Sheriff Page engaged in the following activity protected by the First Amendment to the United States Constitution:

   a. In 2023, Sheriff Page publicly opposed legislation spearheaded by Senator Berger and the coordinated county-level efforts by Defendant Berger to benefit Cordish by allowing the development and operation of a commercial casino in Rockingham County. Sheriff Page's speech protected by the First Amendment in opposition to Senator Berger and Defendant Berger's pro-casino initiatives included, but is not limited to, the following:

      i. During a community forum at Ellisboro Baptist Church on August 1, 2023, Sheriff Page opposed the request of Cordish's shell company, NC

25

Development Holdings LLC, to rezone property in Rockingham County to allow the development of a commercial casino. Sheriff Page stated, "In my opinion, nothing good will come from establishing a casino in Rockingham County or in the state."

ii. At a Summerfield Town Council meeting on August 8, 2023, Sheriff Page spoke during the public comment period in opposition to the proposed development of a casino in Rockingham County. Sheriff Page criticized what he viewed as behind-the-scenes efforts by members of the North Carolina General Assembly and Rockingham County officials to bring a commercial casino to Rockingham County. Sheriff Page stated that he believed whether to allow casino gaming should be determined by local voters in a referendum.

iii. On August 21, 2023, Sheriff Page spoke during the public comment period at the County Board of Commissioners meeting and voiced his strong opposition to the application of NC Development Holdings LLC for rezoning that would pave the way for Cordish's development of a casino in Rockingham County. Sheriff Page expressed concern that a casino would increase crime in the area and threaten the safety and quality of life of Rockingham County residents.

iv. On August 21, 2023, after the Rockingham County Board of Commissioners, including Defendant Berger, unanimously approved NC Development Holdings LLC's rezoning application despite the

26

strong opposition of their constituents, Sheriff Page spoke to hundreds of attendees and promised to continue fighting against Senator Berger's pro-casino legislation to defeat it in the General Assembly, stating, "Stay tuned. We'll be going to Raleigh."

b. During multiple public gatherings in the summer and fall of 2023, including, but not limited to, those listed in subparagraphs (a)(i)-(iv) above, Sheriff Page advocated for the issue of whether to allow commercial casinos in North Carolina to be decided by voters in a referendum. Sheriff Page criticized the lack of transparency regarding this issue by Senator Berger, Defendant Berger, and other government officials and expressed his opinion that their legislative efforts benefited out-of-state special interests, like Cordish, instead of their constituents.

c. On February 18, 2025, Sheriff Page announced that he would run against Senator Berger in the Republican primary election for the District 26 seat in the North Carolina Senate. Sheriff Page filed his notice of candidacy on December 1, 2025. Although more than $10 million was spent by Senator Berger's campaign, dark-money organizations, and political action committees to support Senator Berger's reelection campaign, Sheriff Page defeated Senator Berger and became the Republican nominee for the District 26 seat in the upcoming general election.

63. Both the County and Defendant Berger took retaliatory adverse action against Sheriff Page, including, but not limited to, the following:

27

a. The County unlawfully stripped the COLA and merit increases from Sheriff Page's compensation in the County budget ordinances beginning in the 2024-2025 fiscal year;

b. The County froze Sheriff Page's salary beginning in the 2024-2025 fiscal year;

c. The County demanded, without any valid legal basis, that Sheriff Page repay compensation he had lawfully received during the 2025-2026 fiscal year;

d. The County threatened to unlawfully deduct compensation Sheriff Page had lawfully received during the 2025-2026 fiscal year from his final paycheck if he declined to repay it;

e. The County adopted a budget ordinance for the 2026-2027 fiscal year purporting to declare Sheriff Page ineligible for COLA and merit increases for the remainder of his current term as Sheriff;

f. The County decreased Sheriff Page's pay on his most recent paycheck, issued June 12, 2026, by over $100.00 without notice or explanation, even while it purported to restore earlier adjustments through the June 22, 2026 motion made at the Rockingham County Board of Commissioners special meeting;

g. Upon information and belief, based on the timing of the discovery of the missing records, the timing of Defendant Berger's public records request, and Defendant Berger's misleading public commentary without a corresponding effort to hold responsible the records custodian at the Rockingham County Board of Elections, it appears that Defendant Berger caused or arranged, directly or through a person acting in concert with him, the removal or

28

destruction of Sheriff Page's campaign finance records held in the County's custody;

h. Defendant Berger publicized, through media outlets and his own social media accounts, the false narrative that Sheriff Page had violated campaign finance laws;

i. Defendant Berger publicly and falsely accused Sheriff Page of maintaining the Canteen Account, which had already been disclosed to the Rockingham County Finance Department in writing at least as early as 2011, as an account that was "secret," "off the books," and unknown to the County; and

j. Defendant Berger, upon information and belief, either acting alone or in concert with political allies, encouraged a baseless criminal investigation of Sheriff Page by the SBI regarding the Canteen Account and falsely claimed that Sheriff Page had not disclosed the existence of the Canteen Account to the County.

64. Each of these actions described in paragraph 63(a)-(j) above, separately and in combination, would deter a person of ordinary firmness from engaging in, or continuing to engage in, the constitutionally protected political activities described in paragraph 62(a)-(c) above.

65. Sheriff Page's constitutionally protected activities, described in paragraph 62(a)-(c) above, were a substantial and motivating factor for Defendants' adverse action against him, as described in paragraph 63(a)-(j) above. In support of this allegation, Sheriff Page shows the Court as follows:

29

a.   The County began unlawfully reducing Sheriff Page's compensation in the budget ordinance adopted for the fiscal year immediately after Sheriff Page led the opposition to the casino legislation and County-level initiatives supported by Senator Berger and Defendant Berger. The removal of language explicitly authorizing COLA and merit increases for Sheriff Page was done in retaliation against Sheriff Page for opposing NC Development Holdings LLC's rezoning application, criticizing Defendant Berger and other County Commissioners for supporting the pro-casino rezoning application that Rockingham County residents overwhelmingly opposed, questioning the lack of transparency regarding a trip Defendant Berger and other County Commissioners had taken to meet with Cordish in Maryland in or around June 2023, advocating for a referendum that would allow North Carolina voters instead of elected officials swayed by donor interests to decide whether to legalize casino gaming, and opposing Senator Berger's proposed pro-casino legislation in August 2023 and September 2023.

b.   From the time that Sheriff Page announced that he would run against Senator Berger to represent District 26 in February 2025 through the Republican primary election on March 3, 2026, Defendant Berger, upon information and belief, abused his power and platform as a member of the County Board of Commissioners to falsely malign Sheriff Page by, among other things:

    i.   Causing or arranging, directly or through a person acting in concert with him, the removal or destruction of Sheriff Page's campaign finance

30

records, as described in paragraphs 21 through 23 above, shortly after Sheriff Page announced that he would run against Senator Berger;

ii. Publicizing manufactured false accusations regarding Sheriff Page's campaign finance reports, as described in paragraphs 23 through 30 above;

iii. Publicizing manufactured false accusations against Sheriff Page regarding the Canteen Account, as described in paragraphs 35 through 37 above;

iv. Orchestrating, whether alone or in concert with political allies, a baseless SBI investigation regarding the Canteen Account so that he could weaponize the existence of the investigation to improve Senator Berger's chances of defeating Sheriff Page in the March 3, 2026 Republican primary election; and

v. Knowingly and maliciously delivering false statements from the County Commissioners' dais during Board of Commissioners meetings in the weeks before voting for the March 3, 2026 primary election began.

c. Defendant Berger engaged in the retaliatory conduct against Sheriff Page described in subparagraph (b)(i)-(v) above to punish Sheriff Page for running against Senator Berger for the North Carolina Senate seat for District 26 and engaging in the other constitutionally protected activities described in paragraph 62(a)-(c) above.

31

d. The County explicitly excluded COLA and merit increases from Sheriff Page's compensation in the budget ordinance for the 2026-2027 fiscal year and demanded repayment of the COLA paid to Sheriff Page during the 2025-2026 fiscal year. The exclusionary language in the 2026-2027 budget ordinance and demand for repayment were retaliatory actions by the County intended to punish Sheriff Page for challenging and ultimately unseating Senator Berger and engaging in the other constitutionally protected activities described in paragraph 62(a)-(c) above. Upon information and belief, Defendant Berger advocated for, supported, or voted in favor of the budget ordinance provisions that eliminated COLA and merit increases from Sheriff Page's compensation and that declared him "not eligible" for such increases for the balance of his current term. Defendant Berger took these actions to punish Sheriff Page for engaging in the protected political activity described in paragraph 62 above.

66. Pursuant to 42 U.S.C. § 1983, the County is liable for the retaliatory acts described in paragraphs 63 through 65 above because these acts were carried out by the Board of Commissioners, the County's final policymaking authority with respect to the compensation of the County's elected officers, whose adoption of the budget ordinances and authorization of the unlawful demand for repayment described above constituted official policy of the County, and by officials acting with the County's authority under color of state law.

67. Pursuant to 42 U.S.C. § 1983, Defendant Berger is individually liable for the retaliatory acts described in paragraphs 63 through 65 above, because they constitute non-legislative threats, coercion, and intimidation, undertaken under color of state law, conveying to Sheriff

32

Page that punishment or other adverse official action would follow Sheriff Page's constitutionally protected activity. Defendant Berger's statements from the dais during County Commissioner comments, his social media posts, his role in the destruction of Sheriff Page's campaign finance records and perpetuation of a false narrative regarding those records, and his instigation of a baseless criminal investigation regarding the Canteen Account were not legislative acts, and no legislative immunity attaches to them.

68. As a direct and proximate result of the Defendants' retaliation, described in paragraphs 63 through 65 above, Sheriff Page has suffered and will continue to suffer the loss of compensation, the diminution of his retirement benefit, injury to his reputation, and other damages. Sheriff Page is entitled to recover compensatory damages from both the County and Defendant Berger, in his individual capacity, in an amount to be determined at trial.

69. At all times relevant to the claims set out herein, the First Amendment rights described above, including the right to be free from official retaliation for protected speech, petition, association, and candidacy for public office, were clearly established, and a reasonable official in Defendant Berger's position would have known that the conduct in which he engaged, as described in paragraphs 63 through 65 above, violated Sheriff Page's rights.

70. The conduct of Defendant Berger described in paragraphs 63 through 65 above was motivated by evil motive or intent or, at a minimum, undertaken with reckless or callous indifference to Sheriff Page's federally protected rights. Sheriff Page is, therefore, entitled to recover punitive damages in an amount to be determined at trial from Defendant Berger in his individual capacity.

33

**(Unlawful Reduction of an Elected Officer's Compensation, N.C. Gen. Stat. § 153A-92—Against Defendant Rockingham County)**

71. Paragraphs 1 through 70 above are hereby realleged and incorporated by reference as if fully set forth herein.

72. Sheriff Page is an officer elected by the people of Rockingham County for the duties of his elective office, within the meaning of N.C. Gen. Stat. § 153A-92(b)(1).

73. COLA and merit increases were part of the salary, allowances, and other compensation paid to Sheriff Page for the duties of his office pursuant to section 10 of the fiscal year 2022-2023 County budget ordinance when his current term began in December 2022 and for more than 20 years immediately preceding the beginning of his current term.

74. The County unlawfully reduced Sheriff Page's compensation by eliminating language authorizing COLA and merit increases, which constitute "other compensation" within the meaning of N.C. Gen. Stat. § 153A-92(b)(1), during Sheriff Page's current term of office without Sheriff Page's consent, as described in paragraphs 44 through 55 above.

75. No exception to N.C. Gen. Stat. § 153A-92(b)(1) applies that would allow the County to reduce Sheriff Page's compensation during his current term of office without his consent.

76. The County's authority to amend its budget exists only insofar as it is not otherwise restricted by law. *See* N.C. Gen. Stat. § 159-15. Section 153A-92 constitutes a restriction on the County's authority, and it prohibits the County from removing the COLA and merit increases expressly granted to Sheriff Page by the County budget ordinance in effect at the time Sheriff Page's current term began in December 2022. The County's June 22, 2026 action did not cure this violation. A motion adopted as "new business" is not an amendment of the

budget ordinance under N.C. Gen. Stat. § 159-15, and the County has not identified an amendment, or even a proposed amendment, of its 2026-2027 budget ordinance. Section 10 of that ordinance therefore continues to set Sheriff Page's salary without the COLA and merit increases to which he is entitled and to declare him "not eligible" for them such that the unlawful reduction the County imposed for the 2026-2027 fiscal year remains operative.

77. The County's reduction of Sheriff Page's compensation and its demand for repayment of compensation paid to Sheriff Page during the 2025-2026 fiscal year are unlawful and of no effect. Sheriff Page is entitled to recover the compensation unlawfully withheld by the County, to have his compensation reported to LGERS without reduction, to be free of any demand for repayment or deduction from his pay, and to recover other damages in an amount to be determined at trial.

78. Sheriff Page's claim under N.C. Gen. Stat. § 153A-92 seeks compensation that the County is required by law to pay him as an elected officer and does not sound in tort. No governmental immunity bars this claim or the declaratory and injunctive relief sought herein.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment, 28 U.S.C. §§ 2201-2202—Against Defendant Rockingham County)

79. Paragraphs 1 through 78 above are hereby realleged and incorporated by reference as if fully set forth herein.

80. An actual and justiciable controversy exists between Sheriff Page and the County concerning their respective rights and obligations under N.C. Gen. Stat. § 153A-92, including:

35

a. Whether the County may withhold from Sheriff Page the COLA and merit increases that were expressly part of his compensation when his current term began in December 2022;

b. Whether the County may recoup, or deduct from Sheriff Page's pay, the COLA lawfully paid to him during the 2025-2026 fiscal year; and

c. The compensation amount the County must report to LGERS for the purpose of calculating Sheriff Page's retirement benefit.

81. The County's June 5, 2026 written demand for repayment and threat to deduct the 2025-2026 COLA paid to Sheriff Page from his final paycheck, the County's adoption of the 2026-2027 budget ordinance explicitly excluding COLA and merit increases from Sheriff Page's compensation, and Sheriff Page's rejection of the County's position establish a concrete and immediate dispute between the parties.

82. A declaration of the parties' rights and obligations under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure will resolve this controversy and clarify the legal relations between the parties before the County carries out its threatened imminent deduction and before Sheriff Page's retirement benefit is calculated.

83. Absent preliminary and permanent injunctive relief, Sheriff Page will suffer immediate and irreparable harm. The County has stated its intention to imminently deduct the disputed amounts from Sheriff Page's final paycheck, which will issue upon his retirement within the next few months, and the compensation the County reports to LGERS will determine the retirement benefit Sheriff Page receives for the remainder of his life. The County's threatened recoupment continues the retaliation against Sheriff Page described in paragraphs 63 through

65 above, and the deprivation of Sheriff Page's First Amendment rights, even for minimal periods of time, constitutes irreparable injury.

84. Sheriff Page has no adequate remedy at law. The balance of the equities favors Sheriff Page, who seeks only the compensation to which he is entitled and which he has received continuously for more than 25 years, and the public interest is served by preventing unconstitutional retaliation and by enforcing the protections of N.C. Gen. Stat. § 153A-92.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against the County on Plaintiff's claim under 42 U.S.C. § 1983;

2. Enter judgment in favor of Plaintiff and against Defendant Berger on Plaintiff's claim under 42 U.S.C. § 1983;

3. Declare that the County's reduction of Sheriff Page's compensation, including the deletion of his COLA and merit increases, the adoption of the "not eligible" language as applied to him, and the demand for repayment of compensation properly paid to him, violates N.C. Gen. Stat. § 153A-92 and is void and of no effect as to Sheriff Page for the remainder of his term;

4. Declare that the conduct of the County and Defendant Berger constitutes unlawful retaliation against Sheriff Page for the exercise of his rights under the First and Fourteenth Amendments to the United States Constitution;

5. Preliminarily and permanently enjoin the County, its officers, employees, and agents from recovering, deducting, offsetting, or recouping any compensation already paid to Sheriff Page;

37

6. Preliminarily and permanently enjoin the County, its officers, employees, and agents from reporting to LGERS any compensation figure that reflects an unlawful reduction of Sheriff Page's compensation in violation of N.C. Gen. Stat. § 153A-92;

7. Order the County to calculate and report Sheriff Page's compensation, including for purposes of his retirement benefit, based upon the compensation he was lawfully entitled to receive, including the COLA and merit increases unlawfully withheld by the County;

8. Award Sheriff Page the compensation unlawfully withheld by the County during his term, together with other compensatory damages in an amount to be determined at trial;

9. Award Sheriff Page compensatory damages in an amount to be determined at trial against Defendant Berger for Defendant Berger's violation of Sheriff Page's constitutional rights under color of law;

10. Award Sheriff Page punitive damages against Defendant Berger in an amount to be determined at trial for Defendant Berger's malicious, willful and wanton, and reckless disregard of Sheriff Page's constitutional rights under color of law;

11. Award Sheriff Page his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

12. Award Sheriff Page interest at the maximum lawful rate;

13. Allow a trial by jury on all issues so triable; and

14. Grant Sheriff Page such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 29th day of June, 2026.


**PARKER BRYAN BRITT**
**TANNER & JENKINS, P.L.L.C.**

ATTORNEYS FOR PLAINTIFF


/s/ Alicia Jurney
Alicia Jurney
N.C. State Bar # 37133
P.O. Box 1069
Raleigh, North Carolina 27602
Telephone: (919) 833-3115
Facsimile: (919) 833-3116
Email: alicia@parkerbryanlaw.com

STATE OF NORTH CAROLINA

COUNTY OF ROCKINGHAM

**VERIFICATION**

    I, SAMUEL SCOTT PAGE, do hereby affirm, depose, and state that I am the Plaintiff herein, that I have read the foregoing Complaint and know the statements therein to be true of my own personal knowledge, except for those matters alleged upon information and belief, and as to those matters, I believe them to be true.

This the ____ day of June, 2026.

_____
SAMUEL SCOTT PAGE

Sworn and subscribed
before me this ____ day
of June, 2026.

_____
Notary Public

My Commission expires:

_____