IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SAMUEL SCOTT PAGE,<br><br>Plaintiff,<br><br>v.<br><br>ROCKINGHAM COUNTY and P. KEVIN BERGER, in his individual capacity,<br><br>Defendants. | Case No. 1:26-cv-606<br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Defendants Rockingham County (the "County") and P. Kevin Berger ("Defendant Berger") (collectively, "Defendants"), by counsel, submit this brief in support of their motion to dismiss Plaintiff Samuel Scott Page's ("Plaintiff") Complaint under L.R. 7.3(a).

## STATEMENT OF THE CASE

Plaintiff's Complaint (Doc. 1) alleges that Defendants retaliated against him for his protected political activity, including his opposition to casino legislation and his candidacy against Senator Phil Berger, Sr. ("Senator Berger") for the North Carolina Senate. (Compl. ¶¶ 14-18, 60-65.) Plaintiff also challenges the County's treatment of his compensation under state law and seeks declaratory relief. (Compl. ¶¶ 71-84.) The Complaint does not plausibly allege the required elements of any of Plaintiff's claims. It attempts to drag politics into the courtroom and should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The County is a political subdivision of North Carolina that acts through its Board of Commissioners (the "Board"), which sets compensation for employees, including elected officials. (Compl. ¶ 5.) Defendant Berger is a member of the Board and the son of Senator Berger. (Compl. ¶ 6.) Plaintiff has served continuously as the County's Sheriff since 1998; his current four-year

term runs from December 2022 through December 2026. (Compl. ¶¶ 4, 7.) Plaintiff defeated Senator Berger in the March 3, 2026 Republican primary for North Carolina Senate, District 26. (Compl. ¶ 17.)

When Plaintiff's current term began in December 2022, Section 10 of the County's budget ordinance set his annual salary at $116,619.27 and stated that "[b]enefits, along with pay increases such as merit raises, cost of living adjustments, and classification and compensation study increases will be offered in the same manner as other County employees and as required by law." (Compl. ¶ 44.) N.C. Gen. Stat. § 153A-92(b)(1) provides that a board of commissioners may not reduce an elected officer's salary, allowances, or other compensation during the officer's term unless the officer consents or the Local Government Commission orders the reduction. (Compl. ¶ 10.)

The Complaint alleges that, when Plaintiff's current term began and for more than 20 years beforehand, his compensation included a cost-of-living adjustment ("COLA") and merit increases on the same basis as other County employees. (Compl. ¶ 8.) Employees at the lower end of the performance scale did not receive merit increases. The FY 24-25 budget ordinance omitted language concerning COLA and merit increases and stated only that "[h]ealthcare and retirement benefits will be offered in the same manner as other County employees and as required by law." (Compl. ¶ 46.) The FY 25-26 ordinance contained identical language, but a new payroll system applied the standard COLA to every County employee, including Plaintiff. (Compl. ¶ 47.) The Complaint alleges that the FY 26-27 ordinance used the same "not eligible" language for Plaintiff and the Register of Deeds and that, after Plaintiff defeated Senator Berger, the County requested repayment of unapproved COLA as an overpayment. (Compl. ¶¶ 48-49, 54.) The FY 25-26 ordinance set Plaintiff's salary at $156,289.61, a $39,670.34 increase in less than five years.

(Compl. ¶ 49.) On June 22, 2026, Defendant Berger moved, and the Board voted to apply the COLA for FY 24-25 and the COLA provided to other County employees in FY 25-26 to Plaintiff's and the Register of Deeds' base salaries. (Compl. ¶ 51.) The Board of Commissioners took no action regarding FY 26-27. *Id.*

The Complaint alleges that the Sheriff's office maintained a Fidelity Bank checking account holding vending-machine proceeds (the "Canteen Account"). (Compl. ¶ 31.) It alleges that the office disclosed the account's bank, name, and authorized signers to the County's Finance Department in 2011. (Compl. ¶ 32, Ex. A.) The Complaint does not allege that the Board authorized the Canteen Account, approved a budget for it, authorized any expenditure from the account, or that Plaintiff subjected the account to annual audits.

The Complaint alleges that on December 1, 2025, Defendant Berger stated at a Board meeting that the County had "discovered a bank account that was off the books," asserted that the Canteen Account was "not authorized by the County Commissioners [and] not reported in any County financial statements," and declared that "[t]he County never knew about [the Canteen Account]." (Compl. ¶ 35.) At the January 20, 2026 Board meeting, Defendant Berger allegedly referred to the Canteen Account as Plaintiff's "secret bank account that was discovered by the Finance department." (Compl. ¶ 36.) The Complaint further alleges, upon information and belief, that Defendant Berger, or others acting in concert with him, requested that the North Carolina State Bureau of Investigation ("SBI") initiate an investigation of the Canteen Account. (Compl. ¶ 40.) The Complaint fails to establish whether the Fidelity Bank Canteen Account disclosed to the Finance Department in 2011 is the same account allegedly referred to by Defendant Berger in 2025 and 2026 and investigated by the SBI.

The Complaint alleges that, after Plaintiff's pre-July 1, 2017 campaign finance reports went missing, Defendant Berger submitted public-records requests to the County Board of Elections in April 2025, using his official County email. (Compl. ¶ 24.) The Board of Elections allegedly could not locate reports filed by Plaintiff and one other candidate, and the missing records were discussed in local media and on social media. (Compl. ¶¶ 22-25, 28.) The Complaint hypothesizes, "upon information and belief," that Defendant Berger caused the records' removal or destruction, but identifies no actor, timing, method, or specific act directing it. It appears to base that allegation on the other candidate's missing reports, Defendant Berger's records request, and subsequent public commentary. (Compl. ¶¶ 22-24, 29-30.)

The Complaint identifies Defendant Berger's personal social-media posts concerning the missing campaign finance reports and the Canteen Account. (Compl. ¶¶ 28, 37.) The posts provided in the Complaint include statements by Defendant Berger that campaign finance reports are public records, that the County was unaware of the Canteen Account, and that the County's insurer refused to renew liability coverage due to transparency issues with the Sheriff's Office. (Compl. ¶¶ 28 n.4, 37.)

Plaintiff claims the statements as false. (Compl. ¶¶ 30, 38.) But, relevant to the Complaint, the issue is not whether the statements were true; it is whether the Complaint plausibly alleges that the statements or other challenged conduct constitute retaliatory action prompted by protected activity. The Complaint alleges that the campaign finance reports were missing, that a bank account was disclosed to the Finance Department in 2011, and, upon information and belief, a SBI investigation was requested. (Compl. ¶¶ 22-24, 32, 40.) Those allegations frame the factual disputes but fall short of establishing a constitutional violation.

## ARGUMENT

### I. Legal Standards

A Rule 12(b)(6) motion is "a mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 426, 134 S. Ct. 2459, 2471, 189 L. Ed. 2d 457 (2014). "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). The complaint must do more than "tender[] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. The Court accepts well-pleaded facts and draws reasonable inferences in the plaintiff's favor, but not unwarranted inferences or unreasonable conclusions and arguments. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (quoting *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Nor is the Court required to accept as true "[m]ere legal conclusions." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 572 (M.D.N.C. 2019).

### II. Dismissal Is Appropriate Under Rule 12(b)(6) Because the Complaint Fails to State a Claim Upon Which Relief May Be Granted.

The Complaint asserts three causes of action: (1) a § 1983 First Amendment retaliation claim against both Defendants; (2) a claim against the County under N.C. Gen. Stat. § 153A-92(b)(1); and (3) a declaratory-judgment claim against the County. (Compl. ¶¶ 59-84.) The First Cause fails because the Complaint does not plausibly allege that the challenged conduct would deter a person of ordinary firmness or was caused by protected activity, and, as to Defendant Berger, does not plausibly allege state action or a violation of clearly established law. The Second Cause fails because it does not plead a non-speculative entitlement to additional compensation and alleges that the Board voted to apply the disputed 2024-2025 and 2025-2026 COLAs. (Compl. ¶

51.) The Third Cause is duplicative of the Second and depends on the underlying substantive claim. These are the kinds of meritless claims that Rule 12(b)(6) was designed to dismiss. *Fifth Third Bancorp*, 573 U.S. at 426.

**a. Plaintiff's § 1983 Claim is Insufficient as to Both Defendants.**

The First Cause alleges that both Defendants retaliated against Plaintiff for protected First Amendment activity, including opposition to casino initiatives and Plaintiff's candidacy against Senator Berger. (Compl. ¶¶ 60-65.) The alleged adverse conduct includes changes to Plaintiff's compensation, demand to repay the 2025-2026 COLA, statements concerning missing campaign finance reports and the Canteen Account, the alleged removal or destruction of records, and an SBI investigation. (Compl. ¶¶ 63-67.)

A claim under § 1983 requires a showing that the defendant (1) acted under color of state law and (2) deprived the plaintiff of a constitutional or statutory right. 42 U.S.C. § 1983. "A defendant acts under color of state law for § 1983 purposes when he 'exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *White v. City of Greensboro*, 532 F. Supp. 3d 277, 308-09 (M.D.N.C. 2021), *on reconsideration in part,* 586 F. Supp. 3d 466 (M.D.N.C. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988)).

Plaintiff contends that Defendants violated his First Amendment rights. (Compl. ¶¶ 60-67.) A First Amendment retaliation claim requires a plaintiff to show (1) "that his or her speech was protected," (2) "that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech," and (3) "that a causal relationship exists between its speech and the defendant's retaliatory action." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). The Fourteenth Amendment makes the First Amendment applicable to state actors. *See*

*Gitlow v. People of the State of New York*, 268 U.S. 652, 666, 45 S. Ct. 625, 630, 69 L. Ed. 1138 (1925).

**i. As a public figure, Plaintiff was not "deterred" from speaking, campaigning, or winning the primary election.**

Plaintiff's Complaint must demonstrate that the "defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)). Relevant under these facts, the Supreme Court has recognized that elected representatives are expected "to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478, 142 S. Ct. 1253, 1261, 212 L. Ed. 2d 303 (2022). Importantly, the First Amendment protects an elected official's "right to speak freely on questions of government policy," but it "cannot be used as a weapon to silence other[s] . . . seeking to do the same." *Id.*

The Complaint never addresses any deterrence Plaintiff suffered. Plaintiff does not allege that he was pushed out of public life. Instead, he is a long-serving elected Sheriff who entered and remained in the political arena. He successfully campaigned in seven contests for Sheriff and is no stranger to political competition and controversy. Nothing Defendants allegedly did was aimed at his speech or political activity. The Board's budget and compensation decisions are routine governmental functions. Public discussion of missing campaign-finance records and financial transparency involve legitimate concerns about accountability and responsibility. Requesting public records and an official investigation of financial irregularities are activities county commissioners are elected to undertake. None of the alleged conduct targets or punishes speech.

The Complaint therefore does not plausibly allege adverse action merely because Plaintiff was a political rival.

Even the Complaint's chronology fails to show that the challenged statements, records-related conduct, or compensation decisions deterred Plaintiff from protected activity. He announced his candidacy in February 2025, filed his notice of candidacy on December 1, 2025, campaigned through the March 3, 2026 Republican primary, and won. (Compl. ¶¶ 16-17, 34, 62.) The Complaint claims no instance when Defendants silenced, chilled, deterred, or restricted him. It instead details his continued public opposition, campaign activity, and political speech. Public criticism, records requests, an investigation request, and budget decisions did not deter a candidate who continued campaigning and won. As *Houston Cmty. Coll. Sys.* recognizes, elected representatives are expected to withstand criticism and continue exercising their rights. 595 U.S. at 478. The Complaint therefore alleges no adverse impact sufficient to deter a person of ordinary firmness from speaking, petitioning, or seeking office.

The statements attributed to Defendant Berger are likewise insufficiently adverse as pleaded. They do not become a cognizable constitutional retaliation claim simply because Plaintiff dislikes them or characterizes them as false. The Complaint identifies public comments and social-media posts concerning missing public records and the Canteen Account, not threats, sanctions, denial of access, or any restriction on Plaintiff's ability to speak. (Compl. ¶¶ 28, 35-38, 63.) These are matters of legitimate public concern: whether public records are missing and whether a county-related bank account was authorized and accounted for, as required by law. The Complaint does not allege that the statements caused Plaintiff to stop speaking, lose a platform, forgo a campaign event, or suffer any governmental penalty.  Public criticism and accountability come with the territory of seeking office. Whether they like it or not, candidates will and should face vigorous

political discourse. The notion that accountability and transparency would give rise to a lawsuit is simply un-American. *Houston Cmty. Coll. Sys.*, 595 U.S. at 478. On these allegations, Plaintiff does not satisfy the objective-deterrence standard.

The compensation allegations do not cure the pleading defect. The Board has the affirmative governmental responsibility to set and approve compensation. An elected official's disagreement with a budget decision does not convert that routine function into a First Amendment retaliation claim. During fiscal year 2025-2026, the payroll system applied the standard COLA to every County employee, including Plaintiff, and the County later demanded repayment due to overpayment. (Compl. ¶¶ 47-48.) On the allegations, that demand was an effort to correct an administrative payroll error, not an effort to punish speech. Even so, the Complaint also alleges that the Board of Commissioners voted to apply the 2024-2025 and 2025-2026 COLAs to both Plaintiff and the Register of Deeds, resulting in a favorable adjustment to Plaintiff's pay. (Compl. ¶ 51.) In other words, by the time Plaintiff filed his Complaint, the alleged harm he suffered was effectively reversed, completely undermining any allegations of adverse action. The First Cause should therefore be dismissed as to both Defendants.

**ii. Plaintiff's speculation, based on temporal assumption and political rivalry, fails to meet the rigorous but-for causation standard.**

"The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action." *Durham v. Rapp*, 64 F. Supp. 3d 740, 751 (D. Md. 2014) (quoting *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013)). This demanding standard forecloses Plaintiff's attempt to convert temporal proximity into proof of causation. The Complaint must plead facts showing that protected speech was the but-for reason for alleged acts. This is something more than a flimsy connection, even one

alleged on information and belief, between campaign announcements and alleged acts amid political discourse. The Complaint fails to supply any unified, coherent chain of events connecting protected activity to any specific act by any Defendant. Instead, it asserts scattershot grievances: budget decisions by a multi-member governing Board; social-media commentary by a private citizen; public records requests; an investigation by state law enforcement; and missing records lacking any explanation as to who removed them or why. The Complaint asks the Court to treat these disjointed events as a coordinated retaliatory scheme simply because Plaintiff ran for office against one commissioner's father.

A plausible retaliation claim requires a factual narrative showing that protected speech provoked a specific retaliatory act by an identifiable decision-maker. The Complaint does not do this. It does not allege that any particular person altered Plaintiff's pay, directed destruction of records, or requested an SBI investigation because of his candidacy or political opposition. Instead, it strings together disconnected events, labels them retaliatory, and asks the Court to fill gaps with inference, assumption, and speculation. This is the sort of conclusory pleading forbidden by *Iqbal* and *Twombly*.

The Complaint supplies ordinary, non-retaliatory explanations for each category of challenged conduct, and asks the Court to infer retaliation from timing and political rivalry. The Board was performing its governmental role in managing County finances. And any citizen or official may request records or refer possible financial irregularities for investigation. The Complaint alleges on information and belief that Defendant Berger caused removal or destruction of records, but identifies no facts to support this bald claim. (Compl. ¶¶ 22-24, 65.) It likewise alleges on information and belief that Defendant Berger or persons acting in concert with him requested an SBI investigation. (Compl. ¶¶ 40, 63, 65.) Finally, it alleges on information and belief

that he advocated for, supported, or voted for the challenged budget provisions without identifying when or how. Put simply, no proximate connection between Plaintiff's protected speech and Defendants' actions is alleged.

The Complaint relies on timing, Defendant Berger's familial relationship to Plaintiff's primary opponent, and presumed motive rather than facts identifying a retaliatory decision, instruction, or communication. That is speculation, not but-for causation. The pleaded facts point to routine governmental functions, financial oversight, and public accountability, not retaliation. The fact that Plaintiff ran against Defendant Berger's father does not plausibly establish that any Defendant would have taken the challenged action but for protected activity. The First Cause should therefore be dismissed.

**iii. Defendant Berger's civic participation is not state action. Alternatively, the claimed conduct is protected by qualified immunity.**

The Complaint fails to plausibly allege that Defendant Berger acted under color of state law with respect to the conduct attributed to him. The Complaint tries to convert his status as a county commissioner into state action for every act he took. Section 1983 does not make every statement, records request, or act of civic participation by an elected official an exercise of state power. The Complaint alleges that social-media posts were made on personal accounts, not in an official account or proceeding. (Compl. ¶¶ 28, 37.) Those posts were political speech, not coercive governmental action. It alleges that he requested records from the County Board of Elections and made public statements, but identifies no official authority he exercised over the Board of Elections, custodial authority or access to the records, or role in their disappearance beyond the conclusory allegations. (Compl. ¶¶ 22-24, 63.)

Requesting public records is something any citizen or public official may do, especially after an insurer refuses to renew the County's liability coverage, citing concerns related to

Plaintiff's lack of transparency (Compl. ¶ 28 n.4); the request itself does not compel, direct, or control the agency's response. Likewise, the Complaint alleges that Defendant Berger or others requested an SBI investigation but does not allege that he had authority to direct SBI or exercised such authority. Public statements at a Board meeting are no different for this purpose. The Complaint identifies speech about public matters, not a Board policy, order, sanction, or other exercise of coercive power against Plaintiff. On the pleaded facts, the conduct attributed to Defendant Berger is ordinary political speech, citizen oversight, or a request for governmental action, not the exercise of state power. The Complaint cannot turn normal civic conduct into a § 1983 claim merely by naming Defendant Berger in his individual capacity.

In the alternative, even if the Complaint adequately alleges action under color of state law, Defendant Berger is entitled to qualified immunity. Government officials acting in a discretionary capacity receive qualified immunity unless their conduct violates clearly established law. *Ingram v. Hamilton*, 179 F.4th 251, 257 (4th Cir. 2026). Qualified immunity applies unless the plaintiff pleads facts showing (1) a constitutional violation and (2) that the right was clearly established at the time. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (internal citations omitted); *see also Porter v. Bd. of Trs. of N. Carolina State Univ.*, 72 F.4th 573, 581-82 (4th Cir. 2023) (applying the same inquiry in review of a qualified-immunity based motion to dismiss). The dispositive question is whether a reasonable official would have understood that the conduct was unlawful. *Wood v. Moss*, 572 U.S. 744, 745, 134 S. Ct. 2056, 2059, 188 L. Ed. 2d 1039 (2014). Failure to establish either prong defeats the claim. *See Ingram*, 179 F.4th at 260. The claim fails both prongs. The Complaint does not plausibly allege a constitutional violation because it identifies no act targeting or deterring Plaintiff's speech, and no clearly established rule making ordinary criticism, records requests, public-accountability

inquiries, or requests for investigation unlawful. At minimum, a reasonable county commissioner could not have understood that seeking financial accountability and ensuring records management would expose him to personal liability.

The Complaint does not identify clearly established law that would have put a county commissioner on notice that (a) criticizing a political candidate or asking questions about a county employee at board meetings, (b) requesting records from a public agency, or (c) asking that an elected official's financial practices be investigated violates the First Amendment. Those are ordinary activities of citizens and commissioners, not plainly unlawful conduct. The allegations that Defendant Berger destroyed records, directed an investigation, or advocated for budget provisions are pleaded on information and belief and identify no supporting facts. (Compl. ¶¶ 22-24, 40, 65.) The First Cause cannot satisfy the clearly-established-right prong by interweaving speculation with politics and relabeling ordinary oversight as retaliation. The claim against Defendant Berger therefore fails.

Nor do the alleged facts show that a reasonable county commissioner would have understood that participating in political discourse about Plaintiff or his campaign violated the First Amendment. The Complaint alleges political disagreement, public criticism, records requests, and an investigation request—not a specific official act by Defendant Berger that clearly violated Plaintiff's rights. Plaintiff's theory would also chill Defendant Berger's First Amendment rights by exposing a commissioner to personal liability for criticizing an elected official, requesting public records pertinent to his role, or investigating financial irregularities involving public funds for which he is accountable. Plaintiff's First Amendment rights do not have a monopoly over public debate and cannot be used as a sword and shield to silence officials doing their jobs or citizens engaged in public discourse. "Qualified immunity gives government officials breathing

room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *See Ashcroft*, 563 U.S. at 743, 131 S. Ct. at 2085 (internal citations omitted). The attenuation between Plaintiff's protected activity and Defendant Berger's alleged adverse action confirms that this is not a case of plainly unlawful conduct.

With respect to Defendant Berger's participation in passing the budget ordinances, legislative immunity shields him from personal liability for acts within the legislative sphere. *See United States v. Jefferson*, 534 F. Supp. 2d 645, 651 (E.D. Va.), *aff'd,* 546 F.3d 300 (4th Cir. 2008). Voting on legislation and preparing or introducing a budget are legislative acts, and legislative immunity extends to local legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 55, 118 S. Ct. 966, 973, 140 L. Ed. 2d 79 (1998). Defendant Berger's votes and participation in discussions concerning the budget ordinances were legislative duties he was elected to perform. The claim against him should therefore be dismissed.

**iv. The County's unanimous budget decisions reflect routine fiscal administration, not retaliatory action.**

The theory of liability for the County is pleaded in conclusory terms and equates official action with unconstitutional motive. The Board has governmental responsibility to manage County finances, adopt budgets, and approve compensation for elected officers; exercising those responsibilities cannot alone constitute retaliation. The Complaint alleges that the Board's annual budget ordinances and repayment demand constituted County policy, but pleads no facts showing those actions were taken because of protected activity. (Compl. ¶ 66.) The allegations surrounding budget ordinances, payroll system errors, requests for repayment, and subsequent Board action, describe routine budget administration, payroll correction, and a uniform decision affecting two elected offices. (Compl. ¶¶ 46-53.) They do not plausibly establish policy aimed at suppressing

speech. The Complaint does not allege that the Board silenced Plaintiff, restricted his campaign, conditioned compensation on abandoning protected activity, or otherwise targeted speech. Nor do Defendant Berger's statements or records requests identify any County policy or Board action adopting them. The First Cause should therefore be dismissed against the County.

The comparison to the Register of Deeds further underscores the absence of retaliation. The Complaint alleges that the two offices were subject to the same "not eligible" language in the 2026-2027 budget ordinance, but that their stated salaries later diverged; it does not explain how the Register of Deeds' salary increased or connect that difference to Plaintiff's protected activity beyond the conclusion in paragraph 57. (Compl. ¶¶ 54-57.) Nor does it explain how the June 22, 2026 vote applying the 2024-2025 and 2025-2026 COLAs to both offices supports retaliation, particularly when the Board took no action on 2026-2027. (Compl. ¶ 51.) The remaining allegations concern the 2026-2027 salary and future reporting to the Local Governmental Employees' Retirement System ("LGERS"). (Compl. ¶¶ 55-56.) The Complaint pleads no fact beyond speculation showing a retaliatory motive by the Board. It instead asks the Court to declare that any budget action displeasing to an elected public official is First Amendment retaliation.

Notably, the challenged budget decisions were not made by Defendant Berger alone. Indeed, the five-member Board voted unanimously to approve each of the budget ordinances for fiscal years 2024-2025, 2025-2026, and 2026-2027[1], yet Plaintiff pleads no retaliatory motive for the other commissioners. (Ex. A at 10, 23, 37.) Their participation independently undermines the

---

[1] The fiscal year 2024-2025, 2025-2026, and 2026-2027 budget ordinances and the meeting minutes reflecting the Board's unanimous votes to approve said ordinances are attached hereto, collectively, as **Exhibit A**. As long as Plaintiff does not challenge the authenticity of these documents, the Court may properly consider them on Defendants' Rule 12(b)(6) motion to dismiss because they are "integral to and explicitly relied on in the complaint." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Additionally, it is proper for the Court to take judicial notice of the budget ordinances and meeting minutes because they constitute official public records. *See Hall v. Virginia*, 385 F.3d 421, 432 n.3 (4th Cir. 2004).

theory that the budget changes were driven by Defendant Berger's relationship to Plaintiff's political opponent. The First Cause therefore fails as to the County.

**v. Plaintiff's theory weaponizes the First Amendment to transform ordinary civic oversight into First Amendment retaliation.**

Plaintiff's theory would treat his status as a political official and candidate as protection from all public scrutiny, criticism, financial oversight, and governmental action. But the First Amendment does not immunize candidates from accountability for their public duties or handling of public funds. Public criticism and legitimate oversight do not become retaliation merely because the subject is a candidate. The Complaint therefore fails to state a plausible First Amendment claim.

Defendant Berger is an elected county commissioner, but also a citizen and voter in Rockingham County. The First Amendment protects his right to comment on public officials, question management of public funds, seek public records, and express views about candidates. *See Houston Cmty. Coll. Sys.*, 595 U.S. at 478. Under the Complaint's logic, any citizen who happens to hold public office would forfeit that right whenever a candidate claims to have been deterred. This result would significantly inhibit the First Amendment right and duty of citizens and officials to question a candidate's fitness, financial practices, or transparency.

The Board has a statutory obligation to approve compensation for the County's elected officers, manage the County's fiscal affairs, and ensure public accountability. *See* N.C. Gen. Stat. §§ 153A-82, 153A-149. The Complaint asks the Court to declare that the Board violated the Constitution by performing those duties. This is an untenable interpretation of the First Amendment that would suppress accountability, paralyze county governments, and place elected officers, including sheriffs, above the law.

Scrutiny during a political campaign is not an excuse to silence critics, handicap governing bodies, and reject accountability by filing a § 1983 lawsuit. The First Amendment was not designed to serve that purpose, and this Court should decline Plaintiff's invitation to transform it into such a weapon. The First Cause of Action should be dismissed in its entirety.

**b. Plaintiff's State-Based Compensation Claim Fails Because the Complaint Only Identifies Speculative Injury.**

The Second Cause alleges that the County violated N.C. Gen. Stat. § 153A-92(b)(1) by removing COLA and merit increases from Plaintiff's pay during his term. (Compl. ¶¶ 73-76.) It also challenges the County's demand for repayment of the 2025-2026 COLA and the compensation figure the County will report to LGERS. (Compl. ¶¶ 48, 56, 77.)

Section 153A-92(b)(1) provides:

> The board of commissioners may not reduce the salary, allowances, or other compensation paid to an officer elected by the people for the duties of his elective office if the reduction is to take effect during the term of office for which the incumbent officer has been elected, unless the officer agrees to the reduction or unless the Local Government Commission pursuant to Chapter 159, Article 10, orders a reduction.

N.C. Gen. Stat. § 153A-92(b)(1). The Complaint's statutory theory depends on treating COLA and merit increases as protected "other compensation." It alleges that Plaintiff received those increases under the budget ordinance in effect when his current term began and as a matter of longstanding practice. (Compl. ¶¶ 8-9, 44, 73.) But whether those increases qualify as "other compensation" under § 153A-92(b)(1) is a legal issue, not a conclusion the Court must accept. *Shore*, 412 F. Supp. 3d at 572. Besides, a statutory claim requires an injury that is more than "merely speculative." *McAdoo v. Univ. of N. Carolina at Chapel Hill*, 225 N.C. App. 50, 52, 736 S.E.2d 811, 814 (2013). Hypothetical damages provide no basis for recovery. *See id.* at 67, 736 S.E.2d at 823. The Second Cause therefore must identify a presently enforceable entitlement and a non-speculative injury. It fails to do so.

Even if the Second Cause states a viable state-law claim, the Court may decline supplemental jurisdiction. 28 U.S.C. § 1367(c). In deciding whether to decline jurisdiction, courts consider judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 158, 118 S. Ct. 523, 526, 139 L. Ed. 2d 525 (1997) (internal citations omitted). The Complaint presents a state-law question whether the disputed COLA and merit increases qualify as "other compensation" under § 153A-92(b)(1) and whether the challenged compensation decisions violate that statute. (Compl. ¶¶ 73-77.) Questions of first impression qualify as "novel or complex issue[s] of State law." *See Supinger v. Commonwealth*, No. 6:15-CV-00017, 2015 WL 7758546, at *2 (W.D. Va. Dec. 1, 2015); see also *Winingear v. City of Norfolk, Va.*, No. 2:12CV560, 2013 WL 5672668, at *4 (E.D. Va. Oct. 16, 2013).

The Complaint alleges that, when Plaintiff's current term as Sheriff began in December 2022, his compensation expressly included COLA and merit increases "in the same manner as other County employees." (Compl. ¶¶ 8-9, 44.) It then labels those increases "other compensation" under § 153A-92(b)(1). (Compl. ¶¶ 73-74.) But the Court need not accept that legal characterization as true. *Shore*, 412 F. Supp. 3d at 572. The quoted ordinance language and alleged practice do not, standing alone, establish that every future COLA or merit increase was a fixed component of Plaintiff's compensation protected from reduction during his term. The Second Cause should therefore be dismissed.

The Complaint's chronology also undermines its present damages theory for fiscal years 2024-2025 and 2025-2026. Paragraph 46 alleges no 2024-2025 COLA; paragraph 47 alleges the new payroll system applied the 2025-2026 COLA to every County employee, including Plaintiff; and paragraph 48 alleges the County demanded repayment after Plaintiff defeated Senator Berger. (Compl. ¶¶ 46-48.) The Complaint further alleges that, on June 22, 2026, the Board voted to apply

both COLAs to Plaintiff's base salary. (Compl. ¶ 51.) These allegations leave the amount and legal status of any shortfall or repayment obligation unresolved. They do not identify a concrete, presently recoverable amount of additional compensation after the Board's vote.

The allegations concerning fiscal year 2026-2027 and LGERS are likewise prospective. The Complaint alleges that Plaintiff plans to retire within the next few months and is concerned about the compensation the County will report to LGERS. (Compl. ¶ 56.) It also alleges that the 2026-2027 ordinance sets his salary at $156,289.61 and declares him ineligible for COLA and merit increases. (Compl. ¶ 49.) But the Complaint does not identify the compensation figure the County will report, the amount of any resulting retirement loss, or a specific amount presently due. To the extent the Second Cause seeks damages on that basis, its theory is hypothetical and speculative under *McAdoo*, 225 N.C. App. at 52, 736 S.E.2d at 814.

Even if the Court concludes that the Second Cause states a claim, it should decline supplemental jurisdiction under § 1367(c)(1). The statutory questions, whether COLA and merit increases are "other compensation" protected by § 153A-92(b)(1) and whether the County's compensation decisions violate that provision, are appropriately addressed by a state court, particularly if the federal claim is dismissed. (Compl. ¶¶ 73-77.) If the First Cause is dismissed, no federal claim remains over which the Court has original jurisdiction. The Third Cause rests on the same state-law dispute and supplies no independent basis for federal jurisdiction. (Compl. ¶¶ 2, 79-84.) The Court may therefore decline supplemental jurisdiction over the Second and Third Causes under § 1367(c)(3) or dismiss the Second Cause for the pleading deficiencies described above.

#### c. Plaintiff's Declaratory Judgment Claim is Wholly Duplicative of the State Statutory Claim and Should be Dismissed.

The Third Cause seeks a declaration concerning (a) whether the County may withhold COLA and merit increases, (b) whether it may recoup or deduct the 2025-2026 COLA, and (c) what compensation it must report to LGERS. (Compl. ¶ 80.) Plaintiff alleges that the June 5, 2026 repayment demand and threatened deduction, the 2026-2027 ordinance, and his rejection of the County's position create a concrete dispute, and that absent injunctive relief he will suffer harm. (Compl. ¶¶ 81-84.)

A federal court may exercise declaratory-judgment jurisdiction only if three elements are present: "(1) the complaint alleges an 'actual controversy' between parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g. federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201).

Courts may dismiss declaratory-judgment claims that duplicate underlying substantive claims. *See Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014); *see also Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 863 (E.D. Va. 2016), *aff'd sub nom. Hardnett v. M & T Bank*, 699 F. App'x 242 (4th Cir. 2017). Even when declaratory relief is not dismissed as duplicative, it is barred to the same extent as the substantive claim on which it is based. *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55-56 (4th Cir. 2011) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)). Declaratory relief is not a standalone substantive claim and cannot be used to try a case piecemeal. *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 429 (M.D.N.C. 1988).

The Third Cause is wholly duplicative of the Second. The Second Cause seeks compensation reporting to LGERS without reduction and relief from repayment or deduction. (Compl. ¶ 77.) The Third Cause asks the Court to declare the County's rights and obligations on those same matters. (Compl. ¶ 80.) It would not clarify a distinct legal relationship or resolve an uncertainty left by the substantive claim. The Court should therefore dismiss the Third Cause.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their motion to dismiss and grant such further relief as the Court deems appropriate.

This 21st day of September, 2026.


BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Walker N. Helms*
Walker N. Helms (NC State Bar No. 59774)
*/s/ Tyler Lemons*
Tyler Lemons (NC State Bar No. 46199)
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Telephone: (984) 844-7900
whelms@bakerdonelson.com
tlemons@bakerdonelson.com
*Counsel for Defendants*

**CERTIFICATE OF WORD COUNT**

Pursuant to L.R. 7.3(d)(1), I certify that this brief does not exceed 6,250 words, inclusive of the body of the brief, headings, and footnotes, but exclusive of the caption, signature lines, certificate of service, and any cover page or index.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Walker N. Helms*
Walker N. Helms (NC State Bar No. 59774)
*/s/ Tyler Lemons*
Tyler Lemons (NC State Bar No. 46199)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing ***BRIEF IN SUPPORT OF ROCKINGHAM COUNTY AND P. KEVIN BERGER'S MOTION TO DISMISS*** with the Clerk of the Court using the CM/ECF system, which will effect service on all counsel of record via the Court's CM/ECF system.

This 21st day of September, 2026.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Walker N. Helms*
Walker N. Helms (NC State Bar No. 59774)
*/s/ Tyler Lemons*
Tyler Lemons (NC State Bar No. 46199)
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Telephone: (984) 844-7900
whelms@bakerdonelson.com
tlemons@bakerdonelson.com
*Counsel for Defendants*