IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SAMUEL SCOTT PAGE,<br><br>Plaintiff,<br><br>v.<br><br>ROCKINGHAM COUNTY and P. KEVIN BERGER, in his individual capacity,<br><br>Defendants. | Case No. 1:26-cv-00606-LAF-JGM<br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

Defendants Rockingham County ("County") and P. Kevin Berger ("Defendant Berger") (collectively, "Defendants"), by counsel, submit this brief in support of their motion to dismiss Plaintiff Samuel Scott Page's ("Plaintiff") Amended Complaint (Doc. 11) (the "Complaint") under L.R. 7.3(a).

## STATEMENT OF THE CASE

Plaintiff's Complaint alleges that Defendants retaliated against him for his protected political activity, including his opposition to casino legislation and candidacy against Senator Phil Berger, Sr. ("Senator Berger") for the North Carolina Senate. (Am. Compl. ¶¶ 14-18, 60-65.) Plaintiff also challenges the County's treatment of his compensation and seeks declaratory relief. (Am. Compl. ¶¶ 71-84.) Amended after Defendants moved to dismiss, the Complaint still attempts to drag politics into the courtroom and does not plausibly allege the required elements of Plaintiff's claims. Accordingly, it should be dismissed under Rule 12(b)(6).

## STATEMENT OF FACTS

The County is a political subdivision of North Carolina that acts through its Board of Commissioners (the "Board"), which sets compensation for employees, including elected officials. (Am. Compl. ¶ 5.) Defendant Berger is a member of the Board, served as the Chairman of the

Board in 2025, and is the son of Senator Berger. (Am. Compl. ¶ 6.) Plaintiff alleges he served as the County's Sheriff from 1998 through the commencement of this action, and that his current term runs through December 2026. (Am. Compl. ¶¶ 4, 7.) Plaintiff defeated Senator Berger in the March 3, 2026 Republican primary for North Carolina Senate, District 26. (Am. Compl. ¶ 17.)

When Plaintiff's current term began in December 2022, Section 10 of the County's budget ordinance set his annual salary at $116,619.27 and stated that "[b]enefits, along with pay increases such as merit raises, cost of living adjustments, and classification and compensation study increases will be offered in the same manner as other County employees and as required by law." (Am. Compl. ¶ 44.) The same section left "[f]uture Sheriff's" to be compensated under the County Pay Plan. *Id.*

The Complaint alleges that, when Plaintiff's final term began and for more than 20 years beforehand, his compensation included a cost-of-living adjustment ("COLA") and merit increases on the same basis as other County employees. (Am. Compl. ¶ 8.) The fiscal year ("FY") 24-25 budget ordinance omitted language concerning COLA and merit increases, stated only that "[h]ealthcare and retirement benefits will be offered in the same manner as other County employees and as required by law," and set Plaintiff's salary at $156,289.61, $39,670.34 more than when his term began. (Am. Compl. ¶¶ 44, 46.) Plaintiff alleges that, before that ordinance was adopted, an unnamed Board member told the Register of Deeds that the County would remove these increases so that the "Sheriff . . . would not receive another dime from the County," and, upon information and belief, that the member was Defendant Berger. (Am. Compl. ¶ 46.)

The FY 25-26 ordinance, which Defendant Berger signed as Chairman, contained language identical to the previous year's ordinance, but a new payroll system applied the standard COLA to every County employee, including Plaintiff. (Am. Compl. ¶ 47.) After Plaintiff defeated Senator

Berger, the County requested repayment of that COLA as an overpayment, and the FY 26-27 ordinance applied the same "not eligible" language to Plaintiff and the Register of Deeds. (Am. Compl. ¶¶ 48-49, 54.) On June 22, 2026, Defendant Berger moved, and the Board voted, to apply the COLA for FY 24-25 and the COLA provided to other County employees in FY 25-26 to the base salaries of Plaintiff and the Register of Deeds. (Am. Compl. ¶ 51.) Plaintiff contends the motion described the FY 24-25 COLA as three percent rather than four and did not restore merit or classification and compensation study increases. *Id.* The Board took no action regarding FY 26-27. *Id.*

Plaintiff's account of the County Manager's May 2026 correspondence with the University of North Carolina School of Government is selective. (Am. Compl. ¶¶ 47-49.) In the full thread, Professor Millonzi advised on May 12 that she did not "believe the Sheriff or Register of Deeds should receive COLA or other changes to their compensation during the fiscal year unless there is another provision in the budget ordinance that specifies otherwise." (Ex. A at 4.)[1] On May 20, Professor Juffras, after adding Plaintiff to the thread, called the County's reading of "other compensation" "a reasonable interpretation" and advised that, if that reading is correct, an erroneous COLA "would be an overpayment and the county would be entitled to recoup it," including by deduction "from his final paycheck." (*Id.* at 1-2.)

The Complaint alleges that the Sheriff's office maintained a Fidelity Bank checking account holding vending-machine proceeds (the "Canteen Account"). (Am. Compl. ¶ 31.) It

[1] The May 8-20, 2026 email thread is attached as Exhibit A. The Court may consider documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Plaintiff quotes the thread and builds his willfulness and pretext theories on it. (Am. Compl. ¶¶ 47-50.) He cannot avoid the rest of the thread by quoting it selectively. *See I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (recognizing that the court may consider documents the plaintiff quoted selectively but did not attach).

alleges that the office disclosed the account's bank, name, and authorized signers to the County's Finance Department in 2011. (Am. Compl. ¶ 32, Ex. A.) Even accepting the 2011 Finance disclosure, the Complaint alleges at most the Finance Department's awareness; the Complaint does not allege that the Board authorized the Canteen Account, approved a budget for it, authorized any expenditure from the account, or that Plaintiff subjected the account to annual audits.

The Complaint alleges that on December 1, 2025, during the Commissioner Comments segment of a Board meeting, Defendant Berger stated that the County had "discovered a bank account that was off the books," asserted that the Canteen Account was "not authorized by the County Commissioners [and] not reported in any County financial statements," and declared that "[t]he County never knew about [the Canteen Account]." (Am. Compl. ¶ 35.) At the January 20, 2026 Board meeting, Defendant Berger allegedly referred to the Canteen Account as Plaintiff's "secret bank account that was discovered by the Finance department." (Am. Compl. ¶ 36.) The Complaint further alleges, upon information and belief, that Defendant Berger, or others acting in concert with him, requested that the North Carolina State Bureau of Investigation ("SBI") initiate an investigation of the Canteen Account. (Am. Compl. ¶ 40.)

The Complaint alleges that, after Plaintiff's pre-July 1, 2017 campaign finance reports went missing, Defendant Berger submitted public-records requests to the County Board of Elections ("BOE") in April 2025, using his official County email. (Am. Compl. ¶ 24.) The BOE allegedly could not locate reports filed by Plaintiff and another candidate, and the missing records were discussed in local media and on social media. (Am. Compl. ¶¶ 22-25, 28.) The Complaint hypothesizes, "upon information and belief," that Defendant Berger caused the records' removal or destruction, but identifies no timing, method, or specific act directing it. (Am. Compl. ¶¶ 22-24, 29-30.)

The Complaint identifies Defendant Berger's personal social-media posts concerning the missing campaign finance reports and the Canteen Account. (Am. Compl. ¶¶ 28, 37.) The posts include statements that campaign finance reports are public records and that the County was unaware of the Canteen Account. (Am. Compl. ¶¶ 28, 37.)

## ARGUMENT

### I. Legal Standards

A Rule 12(b)(6) motion is a "mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must do more than "tender[] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. The Court accepts well-pleaded facts and draws reasonable inferences in the plaintiff's favor, but not unwarranted inferences or unreasonable conclusions and arguments. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). Nor is the Court required to accept as true "[m]ere legal conclusions." *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 572 (M.D.N.C. 2019).

### II. Dismissal Is Appropriate Under Rule 12(b)(6) Because the Complaint Fails to State a Claim Upon Which Relief May Be Granted.

The Complaint asserts three causes of action: (1) a § 1983 First Amendment retaliation claim against both Defendants; (2) a claim against the County under N.C. Gen. Stat. § 153A-92; and (3) a declaratory-judgment claim against the County. (Am. Compl. ¶¶ 59-84.) The First Cause fails because the Complaint does not plausibly allege that the challenged conduct would deter a person of ordinary firmness or was caused by protected activity, and, as to Defendant Berger, does not plausibly allege state action or a violation of clearly established law and rests in part on

legislatively immune acts. The Second Cause fails because the increases at issue are not protected compensation as a matter of law and the newly added § 153A-92(b)(2) theory supplies no independent claim. The Third Cause is duplicative of the Second and depends on the underlying substantive claim.

**a. Plaintiff's § 1983 Claim Fails as to Both Defendants.**

The First Cause alleges that both Defendants retaliated against Plaintiff for protected First Amendment activity, including opposition to casino initiatives and Plaintiff's candidacy against Senator Berger. (Am. Compl. ¶¶ 60-65.) The alleged adverse conduct includes changes to Plaintiff's compensation, demand to repay the 2025-2026 COLA, statements concerning missing campaign finance reports and the Canteen Account, the alleged removal or destruction of records, and an SBI investigation. (Am. Compl. ¶¶ 63-67.)

A claim under § 1983 requires a showing that the defendant (1) acted under color of state law and (2) deprived the plaintiff of a constitutional or statutory right. 42 U.S.C. § 1983. "A defendant acts under color of state law for § 1983 purposes when he 'exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *White v. City of Greensboro*, 532 F. Supp. 3d 277, 308–09 (M.D.N.C. 2021), *on reconsideration in part*, 586 F. Supp. 3d 466 (M.D.N.C. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). A First Amendment retaliation claim requires a plaintiff to show (1) "that his or her speech was protected," (2) "that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech," and (3) "that a causal relationship exists between its speech and the defendant's retaliatory action." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

#### i. As a public figure, Plaintiff was not "deterred" from speaking, campaigning, or winning the primary election.

Plaintiff's Complaint must demonstrate that the "defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal citations omitted). The Supreme Court has recognized that elected representatives are expected "to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022). The First Amendment protects an elected official's "right to speak freely on questions of government policy," but it "cannot be used as a weapon to silence other[s] . . . seeking to do the same." *Id.*

The Complaint's chronology fails to show that the challenged statements, records-related conduct, or compensation decisions deterred Plaintiff from protected activity. He announced his candidacy in February 2025, filed his notice of candidacy on December 1, 2025, campaigned through the March 3, 2026 Republican primary, and won. (Am. Compl. ¶¶ 16-17, 34, 62.) Plaintiff claims no instance when Defendants silenced, deterred, or restricted him. It instead details his continued public opposition, campaign activity, and political speech. Although a plaintiff's actual response is "not dispositive," it "provides some evidence of the tendency of [the] conduct to chill First Amendment activity." *Constantine*, 411 F.3d at 500. Here, that evidence points in one direction. The Complaint alleges no adverse impact sufficient to deter a person of ordinary firmness from speaking, petitioning, or seeking office.

The statements attributed to Defendant Berger are insufficiently adverse as pleaded. Whether retaliatory conduct adversely affected First Amendment rights "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the

speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686. Here, both speaker and alleged retaliator are elected officials engaged in political debate. Statements that do not imply that governmental power will be used to silence the plaintiff are not adverse action. *See id.* at 686–89. And given the "rough and tumble" of the political arena, conduct directed at political actors is often de minimis. *See Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 419–20 (4th Cir. 2006).

The Complaint identifies public comments and social-media posts concerning missing public records and the Canteen Account; not threats, sanctions, denial of access, or any restriction on Plaintiff's ability to speak. (Am. Compl. ¶¶ 28, 35-38, 63.) Defendant Berger is not alleged to have threatened any official action; Plaintiff alleges only that later events "followed" his protected activity. (Am. Compl. ¶ 67.) These are matters of legitimate public concern: whether public records are missing and whether a county-related bank account was authorized and accounted for, as required by law. Public criticism and accountability come with the territory of seeking office. *See Houston Cmty. Coll. Sys.*, 595 U.S. at 478. As alleged, Plaintiff does not satisfy the objective-deterrence standard.

The compensation allegations do not cure the pleading defect. The Board has the affirmative responsibility to set and approve compensation. An elected official's disagreement with a budget decision does not convert that routine function into a retaliation claim. During FY 2025-2026, the payroll system applied the standard COLA to every County employee, including Plaintiff, and the County later demanded repayment due to overpayment. (Am. Compl. ¶¶ 47-48.) As alleged, that demand was an effort to correct an administrative payroll error, not an effort to punish speech. Even so, the Complaint alleges that, on Defendant Berger's motion, the Board voted to apply the 2024-2025 and 2025-2026 COLAs to both Plaintiff and the Register of Deeds,

which further undermines any retaliatory inference. (Am. Compl. ¶ 51.) Plaintiff calls into question the vote's scope, *id.*, but a Board that votes to increase a plaintiff's pay is not plausibly punishing him, and any remaining dispute over the amount is a state-law compensation question, not a constitutional injury. The First Cause should therefore be dismissed as to both Defendants.

**ii. Timing and political rivalry do not satisfy the rigorous but-for causation standard.**

"The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action." *Durham v. Rapp*, 64 F. Supp. 3d 740, 751 (D. Md. 2014) (quoting *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013)). Knowledge of protected activity alone does not establish a causal connection, and "the passage of time tends to negate the inference" of causation, *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656–57 (4th Cir. 2017) (internal citations omitted). This demanding standard forecloses Plaintiff's attempt to convert temporal proximity into proof of causation. The Complaint fails to supply any unified, coherent chain of events connecting protected activity to any specific act by any Defendant. Instead, it asserts scattershot grievances: budget decisions by a multi-member governing Board; social-media commentary by a private citizen; public records requests; a state law enforcement investigation; and missing records lacking any explanation as to who removed them or why. The Complaint asks the Court to treat these disjointed events as a coordinated retaliatory scheme simply because Plaintiff ran for office against one commissioner's father.

A plausible retaliation claim requires a factual narrative showing that protected speech provoked a specific retaliatory act by an identifiable decisionmaker. The Complaint does not do this. Its centerpiece, the alleged remark that the Sheriff "would not receive another dime," is

attributed to an unnamed Board member, and to Defendant Berger only "upon information and belief" based on his "history of contacting" the Register of Deeds. (Am. Compl. ¶ 46.) Even taken as true, the remark expresses hostility toward the Sheriff, but says nothing about casinos, a referendum, or a Senate candidacy, and therefore fails to tie any pay decision to protected activity. Nor does the newly added allegation that Plaintiff supported a challenger to three incumbent commissioners in the March 5, 2024 primary fill the gap. (Am. Compl. ¶¶ 62(b), 65(a).) The Complaint alleges no facts showing that any commissioner adopted the FY 24-25 ordinance because of that support, and Plaintiff's casino advocacy occurred in the summer and fall of 2023, months before that ordinance. (Am. Compl. ¶¶ 46, 62(a)-(b), 65(a).) The Complaint likewise does not allege facts showing that any particular person directed destruction of records or requested an SBI investigation because of Plaintiff's candidacy or political opposition. Instead, it strings together disconnected events, labels them retaliatory, and asks the Court to fill gaps with inference, assumption, and speculation. This is the sort of conclusory pleading forbidden by *Iqbal* and *Twombly*.

The Complaint supplies ordinary, non-retaliatory explanations for each category of challenged conduct, and asks the Court to infer retaliation from timing and political rivalry. The Board was performing its governmental role in managing County finances. And any citizen or official may request records or refer possible financial irregularities for investigation. The Complaint alleges on information and belief that Defendant Berger caused removal or destruction of records but identifies no facts to support this bald claim. (Am. Compl. ¶¶ 22-24, 63(g), 65(b).) It likewise alleges on information and belief that Defendant Berger "or others acting in concert with him" requested an SBI investigation. (Am. Compl. ¶¶ 40, 63(j), 65(b).) The Complaint now adds that Defendant Berger voted for, presided over, signed, or seconded the budget ordinances

(Am. Compl. ¶¶ 6, 47, 65(d)), but those are legislative acts shared by every commissioner who voted for them, and they cannot support his liability. *See* Part II.a.iii, *infra*.

Plaintiff's Canteen Account theory also rests on a missing identity allegation. Plaintiff alleges that the Sheriff's Office disclosed a "Canteen Account" to the Finance Department in 2011 (Am. Compl. ¶ 32, Ex. A), and that Defendant Berger later referred to a "bank account that was off the books" that "was discovered late in the Spring" of 2025 and to a "secret bank account." (Am. Compl. ¶¶ 35-37.) But the link between those statements and the 2011 account comes from Plaintiff's own bracketed insertions, such as "[referring to the Canteen Account]," not from anything Defendant Berger is alleged to have said. (*Id.*) Plaintiff's own exhibit shows that the Sheriff's Office maintained several checking accounts. (Am. Compl. Ex. A.) Yet the Complaint pleads no facts showing that the account Defendant Berger discussed, the records the County requested, or the account the SBI allegedly investigated was the account disclosed in 2011. (Am. Compl. ¶¶ 35-40.) Without that link, Plaintiff's premise that the statements were false—and therefore pretextual—is nothing but an assumption, not a well-pleaded fact.

Timing, Defendant Berger's familial relationship to Plaintiff's primary opponent, and presumed motive are speculation, not but for causation. The First Cause should therefore be dismissed.

**iii. Defendant Berger's civic participation is not state action, his legislative acts are immune, and qualified immunity bars the remaining claim.**

The Complaint fails to plausibly allege that Defendant Berger acted under color of state law with respect to much of the conduct attributed to him. Section 1983 does not make every statement, records request, or act of civic participation by an elected official an exercise of state power. A public official's social-media activity is state action only if the official "possessed actual authority to speak on the State's behalf" and "purported to exercise that authority when he spoke

on social media." *Lindke v. Freed*, 601 U.S. 187, 191 (2024). The Complaint alleges posts on Defendant Berger's personal accounts (Am. Compl. ¶¶ 28, 37), but not that he, one of five commissioners, had authority to speak for the County on these matters or purported to exercise it. Those posts plainly constitute political speech, not governmental action. The Complaint alleges that he requested records from the BOE and made public statements but identifies no official authority he exercised over the BOE, custodial authority or access to the records, or role in their disappearance beyond conclusory allegations. (Am. Compl. ¶¶ 22-24, 63(g)-(h).)

Requesting public records is something any citizen or public official may do; the request itself does not compel, direct, or control the agency's response. Likewise, the Complaint alleges that Defendant Berger or others requested an SBI investigation but does not allege that he had authority to direct SBI or exercised such authority. (Am. Compl. ¶ 40.) And even accepting that remarks during the Commissioner Comments segment of Board meetings were made under color of law (Am. Compl. ¶¶ 19, 35-36), the Complaint identifies speech about public matters and questions to County staff, not a Board policy, order, sanction, or other exercise of coercive power against Plaintiff. As pleaded, the conduct attributed to Defendant Berger is ordinary political speech, citizen oversight, or a request for governmental action, not the exercise of state power.

Even if the Complaint adequately alleges action under color of state law, Defendant Berger is entitled to qualified immunity. Government officials acting in a discretionary capacity receive qualified immunity unless their conduct violates clearly established law. *Ingram v. Hamilton*, 179 F.4th 251, 257 (4th Cir. 2026). Qualified immunity applies unless the plaintiff pleads facts showing (1) a constitutional violation and (2) that the right was clearly established at the time. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *see also Porter v. Bd. of Trs. of N. Carolina State Univ.*, 72 F.4th 573, 581–82 (4th Cir. 2023) (applying the same inquiry in reviewing a qualified-immunity

based motion to dismiss). The dispositive question is whether a reasonable official would have understood that the conduct was unlawful. *Wood v. Moss*, 572 U.S. 744, 745 (2014). Failure to establish either prong defeats the claim. *See Ingram*, 179 F.4th at 260. The claim fails both prongs. The Complaint does not plausibly allege a constitutional violation because it identifies no act targeting or deterring Plaintiff's speech, and no clearly established rule making ordinary criticism, records requests, public-accountability inquiries, or requests for investigation unlawful.

The Complaint does not identify clearly established law that would have put a county commissioner on notice that (a) criticizing a political candidate or asking County staff questions about an elected official at board meetings, (b) requesting records from a public agency, or (c) asking that an elected official's financial practices be investigated violates the First Amendment. Those are ordinary activities of citizens and commissioners, not plainly unlawful conduct. The allegations that Defendant Berger destroyed records or directed an investigation are pleaded on information and belief without supporting facts. (Am. Compl. ¶¶ 22-24, 40, 65(b).) The First Cause cannot satisfy the clearly-established-right prong by interweaving speculation with politics and relabeling ordinary oversight as retaliation. The claim against Defendant Berger therefore fails.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted). The attenuation between Plaintiff's protected activity and Defendant Berger's alleged adverse action confirms that this is not a case of plainly unlawful conduct.

Legislative immunity independently bars any claim against Defendant Berger based on the budget ordinances. "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity," and it extends to local legislators. *Bogan v. Scott-Harris*, 523 U.S.

44, 54 (1998) (internal quotation marks omitted). Voting for an ordinance is "quintessentially legislative," and signing a budget ordinance into law is "formally legislative." *Id.* at 55. Whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Plaintiff now alleges that Defendant Berger voted for the FY 24-25 ordinance, presided over and signed the FY 25-26 ordinance, and seconded and voted for the FY 26-27 ordinance. (Am. Compl. ¶¶ 6, 47, 65(d).) Each is a legislative act. Plaintiff effectively concedes the point by limiting Defendant Berger's individual liability to non-budget conduct (Am. Compl. ¶ 67), yet Plaintiff relies on those votes to plead motive (Am. Compl. ¶ 65(d)). The immunity "would be of little value" if legislators could be subjected to trial "upon a conclusion of the pleader" or "a jury's speculation as to motives." *Bogan*, 523 U.S. at 54–55 (internal citations omitted). No claim against Defendant Berger may rest on his budget votes.

**iv. The County's unanimous budget decisions reflect routine fiscal administration, not retaliatory action.**

The Board has governmental responsibility to manage County finances, adopt budgets, and approve compensation for elected officers; exercising those responsibilities cannot alone constitute retaliation. A county is liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Complaint alleges that the Board's annual budget ordinances and repayment demand were the Board's "deliberate policy," but pleads no facts showing that the Board, as opposed to one unnamed member, took those actions because of protected activity. (Am. Compl. ¶¶ 48, 66.) The allegations surrounding budget ordinances, payroll system errors, requests for repayment, and subsequent Board action describe routine budget administration, payroll correction, and a uniform decision affecting two elected offices. (Am. Compl. ¶¶ 46-53.) They do not plausibly establish

policy aimed at suppressing speech. The Complaint does not allege that the Board silenced Plaintiff, restricted his campaign, conditioned compensation on abandoning protected activity, or otherwise targeted speech. Nor do Defendant Berger's statements or records requests identify any County policy or Board action adopting them. The First Cause should therefore be dismissed against the County.

The full UNC School of Government thread also defeats Plaintiff's willfulness theory or, at minimum, makes Plaintiff's characterization of the County's position as a knowingly unlawful retaliatory pretext implausible. Plaintiff alleges that the County demanded repayment after Professor Millonzi warned that recoupment might violate § 153A-92(b)(1). (Am. Compl. ¶ 48.) But that concern was expressly conditional, arising only "if there is any indication that the COLA was approved or if it is even a bit nebulous," and the same thread advised that the County's reading was reasonable and that it could recoup an erroneous COLA, advice Plaintiff himself received. (Ex. A at 1-3.) The Court may credit an integral document "over conflicting allegations in the complaint." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016)). Following the course the County's advisors described as lawful cannot plausibly be characterized as retaliatory.

The comparison to the Register of Deeds further underscores the absence of retaliation. The two offices were subject to the same omission of COLA and merit language in the FY 24-25 ordinance, the same "not eligible" language in the FY 26-27 ordinance, and the same June 22, 2026 vote applying two years of COLA. (Am. Compl. ¶¶ 51, 54.) Plaintiff now alleges that the Register's stated salary rose while his remained at $156,289.61 (Am. Compl. ¶ 55), but different salary figures for two different offices do not plausibly show retaliation. Plaintiff does not plead that the offices were similarly situated in duties, pay grade, or budget history. The pleading alleges

different numbers without providing a legally meaningful comparator. Plaintiff's theory that the County withheld increases from the Register only so its treatment of the two offices "would appear even-handed" (Am. Compl. ¶ 54) is speculation, not a well-pleaded fact. The Complaint pleads no fact beyond speculation showing a retaliatory motive by the Board. It instead asks the Court to declare that any budget action displeasing to an elected public official is First Amendment retaliation.

The challenged budget decisions were not made by Defendant Berger alone. The five-member Board voted unanimously to approve each budget ordinance for FY 24-25, 25-26, and 26-27[2], yet Plaintiff pleads no facts showing that a majority of the Board acted with retaliatory motive. (Ex. B at 10, 23, 37.) His allegation that he supported a challenger to three incumbents in the March 2024 primary (Am. Compl. ¶ 62(b)) does not allege that any commissioner other than Defendant Berger knew of or acted on that support and says nothing about the remaining two commissioners. The other commissioners' participation independently undermines the theory that the budget changes were driven by Defendant Berger's relationship to Plaintiff's political opponent. At most, Plaintiff alleges an unnamed statement by one Board member and political activity directed at three incumbents; Plaintiff does not plead facts showing that a majority of the five-member board knew of, shared, or acted on any retaliatory motive. The First Cause therefore fails as to the County and should be dismissed in its entirety.

---

[2] The FY 24-25, 25-26, and 26-27 budget ordinances and the meeting minutes reflecting the Board's unanimous votes to approve said ordinances are attached hereto, collectively, as Exhibit B. As long as Plaintiff does not challenge the authenticity of these documents, the Court may properly consider them because they are "integral to and explicitly relied on in the complaint." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The Court may also judicially notice the budget ordinances and meeting minutes as official public records. *See Hall v. Virginia*, 385 F.3d 421, 432 n.3 (4th Cir. 2004).

**b. Plaintiff's State-Law Compensation Claim Fails as a Matter of Law.**

The Second Cause alleges that the County violated N.C. Gen. Stat. § 153A-92 by removing COLA, merit, and classification and compensation study increases from Plaintiff's pay during his term. (Am. Compl. ¶¶ 73-76.) It also challenges the County's demand for repayment of the 2025-2026 COLA and the compensation figures the County has reported and will report to LGERS. (Am. Compl. ¶¶ 48, 56, 77.)

Section 153A-92(b)(1) provides:

> The board of commissioners may not reduce the salary, allowances, or other compensation paid to an officer elected by the people for the duties of his elective office if the reduction is to take effect during the term of office for which the incumbent officer has been elected, unless the officer agrees to the reduction or unless the Local Government Commission pursuant to Chapter 159, Article 10, orders a reduction.

N.C. Gen. Stat. § 153A-92(b)(1). The Complaint's statutory theory depends on treating COLA, merit, and classification and compensation study increases as protected "other compensation." It alleges that Plaintiff received those increases under the budget ordinance in effect when his final term began and as a matter of longstanding practice. (Am. Compl. ¶¶ 8-9, 44, 73.) But whether those increases qualify as "other compensation" under § 153A-92(b)(1) is a legal issue, not a conclusion the Court must accept. *Shore*, 412 F. Supp. 3d at 572. A statutory claim also requires an injury that is more than "merely speculative." *McAdoo v. Univ. of N. Carolina at Chapel Hill*, 225 N.C. App. 50, 52, 736 S.E.2d 811, 814 (2013).

Even if the Second Cause states a viable state-law claim, the Court may decline supplemental jurisdiction. 28 U.S.C. § 1367(c). In deciding whether to decline jurisdiction, courts consider judicial economy, convenience, fairness, and comity. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 158 (1997). The Complaint presents a state-law question whether the disputed increases qualify as "other compensation" under § 153A-92(b)(1) and whether the

challenged compensation decisions violate that statute. (Am. Compl. ¶¶ 73-77.) Questions of first impression qualify as "novel or complex issue[s] of State law." *See Supinger v. Commonwealth*, No. 6:15-CV-00017, 2015 WL 7758546, at *2 (W.D. Va. Dec. 1, 2015).

The quoted ordinance language and alleged practice do not, standing alone, establish that every future COLA, merit, or classification and compensation study increase was a fixed component of Plaintiff's compensation protected from reduction during his term. Rather, the December 2022 ordinance fixed "[t]he current . . . Sheriff" at a stated annual rate and left only "[f]uture Sheriff's" to the County Pay Plan. (Am. Compl. ¶ 44.) The newly added § 153A-92(b)(2) theory adds nothing. (Am. Compl. ¶¶ 10, 49, 75.) As Plaintiff describes it, subsection (b)(2) addresses how a board may reduce compensation for the term following a general election. (Am. Compl. ¶ 10.) Plaintiff identifies nothing in that subsection creating an independent claim, and it matters only if the increases at issue were protected compensation under subsection (b)(1) in the first place. They were not. The Second Cause should therefore be dismissed.

The Complaint now pleads hypothetical salary rates under various combinations of COLA and merit increases (Am. Compl. ¶ 45), but every figure assumes that those increases were protected compensation. Plaintiff received the 2025-2026 COLA but not the 2024-2025 COLA, and on June 22, 2026, the Board voted to apply both to his base salary. (Am. Compl. ¶¶ 46-48, 51.) Any remaining shortfall depends entirely on the unresolved state-law question. The LGERS allegations fare no better. Plaintiff alleges the County reported his FY 24-25 and FY 25-26 compensation at the amounts it actually paid him (Am. Compl. ¶ 56), and he seeks a supplemental report and associated contributions and interest under N.C. Gen. Stat. § 128-30(b2) (Am. Compl. ¶ 80(c)). Whether those reports must be corrected depends on the same unresolved state-law question.

Even if the Court concludes that the Second Cause states a claim, it should decline supplemental jurisdiction under § 1367(c)(1). The statutory questions, whether the disputed increases are "other compensation" protected by § 153A-92(b)(1) and whether the County's compensation decisions violate that provision, are appropriately addressed by a state court, particularly if the federal claim is dismissed. (Am. Compl. ¶¶ 73-77.) The Complaint's new demand for supplemental LGERS reporting under § 128-30(b2) adds another state-law question. (Am. Compl. ¶ 80(c).) If the First Cause is dismissed, no federal claim remains over which the Court has original jurisdiction. The Third Cause rests on the same state-law dispute and supplies no independent basis for federal jurisdiction. (Am. Compl. ¶¶ 2, 79-84.) The Court may therefore decline supplemental jurisdiction over the Second and Third Causes under § 1367(c)(3) or dismiss the Second Cause for the deficiencies described above.

**c. Plaintiff's Declaratory Judgment Claim Duplicates the State Statutory Claim and Should Be Dismissed.**

The Third Cause seeks a declaration concerning (a) whether the County may withhold COLA and merit increases, (b) whether it may recoup or deduct the 2025-2026 COLA, and (c) what compensation it must report to LGERS and whether it must correct prior reports. (Am. Compl. ¶ 80.) A federal court may exercise declaratory-judgment jurisdiction if three elements are present: "(1) the complaint alleges an 'actual controversy' between parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties…; and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201).

Courts may dismiss declaratory-judgment claims that duplicate underlying substantive claims. *See Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL

652253, at *2 (W.D. Va. Feb. 19, 2014). Even when declaratory relief is not dismissed as duplicative, it is barred to the same extent as the underlying substantive claim. *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011). Declaratory relief is not a standalone substantive claim and cannot be used to try a case piecemeal. *State Farm Fire & Cas. Co. v. Taylor*, 118 F.R.D. 426, 429 (M.D.N.C. 1988).

The Third Cause is duplicative of the Second. The Second Cause seeks compensation, interest, LGERS reporting without reduction, correction of LGERS reports, and relief from repayment or deduction. (Am. Compl. ¶ 77.) The Third Cause asks the Court to declare the County's rights and obligations on those same matters. (Am. Compl. ¶ 80.) It would not clarify a distinct legal relationship or resolve an uncertainty left by the substantive claim. And to the extent it targets a future deduction from Plaintiff's final paycheck, the Complaint no longer alleges a controversy "of sufficient immediacy and reality": it describes that threat only as of "the commencement of this action" and now seeks only permanent relief. *Volvo*, 386 F.3d at 592; (Am. Compl. ¶¶ 53, 56, 83). The Court should therefore dismiss the Third Cause.

**CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court grant their motion to dismiss and grant such further relief as the Court deems appropriate.

This 6th day of November, 2026.


BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Tyler Lemons*
Tyler Lemons (NC State Bar No. 46199)
*/s/ Walker N. Helms*
Walker N. Helms (NC State Bar No. 59774)
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Telephone: (984) 844-7900

tlemons@bakerdonelson.com
whelms@bakerdonelson.com

*Counsel for Defendants*

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), I certify that this brief does not exceed 6,250 words, inclusive of the body of the brief, headings, and footnotes, but exclusive of the caption, signature lines, certificate of service, and any cover page or index.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Tyler Lemons*
Tyler Lemons (NC State Bar No. 46199)
*/s/ Walker N. Helms*
Walker N. Helms (NC State Bar No. 59774)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing ***BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT*** with the Clerk of the Court using the CM/ECF system, which will effect service on all counsel of record via the Court's CM/ECF system.

This 6th day of November, 2026.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Tyler Lemons*
Tyler Lemons (NC State Bar No. 46199)
*/s/ Walker N. Helms*
Walker N. Helms (NC State Bar No. 59774)
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Telephone: (984) 844-7900
tlemons@bakerdonelson.com
whelms@bakerdonelson.com

*Counsel for Defendants*